141 N.J. Super. 25 (1976)
357 A.2d 67
AMERICAN FEDERATION OF STATE, COUNTY AND MUNICIPAL EMPLOYEES, AFL-CIO, COUNCIL NO. 52 AND ITS LOCAL 2306, PLAINTIFFS,
v.
THE HUDSON COUNTY WELFARE BOARD, A PUBLIC CORPORATION OF THE STATE OF NEW JERSEY, AND THE COUNTY OF HUDSON, A PUBLIC CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided April 1, 1976.
*26 Mr. Michael J. Herbert for plaintiffs (Messrs. Sterns & Greenberg, attorneys).
Mr. George R. Allen for defendant Hudson County Welfare Board.
Mr. Harold J. Ruvoldt, Jr., Hudson County Counsel, for defendant County of Hudson.
KENTZ, J.S.C.
This controversy presents for decision an issue not heretofore addressed in any reported opinion of this State. The case deals with the powers of the newly elected County Executive form of government in Hudson County chosen by the voters of the county in November 1975 pursuant to the Optional County Charter Law (act), L. 1972, c. 154; N.J.S.A. 40:41A-1 et seq. Specifically, the issue *27 to be decided is whether the County of Hudson (county) has the power under the act to abolish the present structure of the Hudson County Welfare Board (board). The particular issue is before the court on cross-motions for partial summary judgment. R. 4:46-2. The case in general has more aspects to be explored, but due to the urgency of time and the important public interest involved, it was agreed by the court and counsel that the interests of all concerned would best be served by an expedited hearing and decision on this limited issue. Cf. Retz v. Saddle Brook Mayor & Council, 69 N.J. 563 (1976). The time problem arises out of the fact that the county intends to adopt its new Administrative Code (Code) on April 2, to become effective May 1, 1976, as required by N.J.S.A. 40:41A-125. Section 8.3 of the proposed Code will transform the board into the Division of Welfare, which is a unit within the proposed Department of Health and Social Services.
Plaintiffs American Federation of State, County and Municipal Employees, AFL-CIO, Council No. 52, and its Local 2306 (union) are the collective bargaining representatives for the employees of defendant board. There is presently in existence a valid collective bargaining agreement between the union and the board which is set to expire on December 31, 1976. Pursuant to Article X of this collective bargaining agreement, the board notified approximately 21 members of the union that they were to be promoted to certain positions. At about the same time the county, through the county counsel's office, notified the board that "no raises of any kind should be granted to any employees or any agreement to give raises entered into." Following the instructions of the county, the board refused to promote the employees who had been previously notified that such promotions were forthcoming. Pursuant to the collective bargaining agreement the union filed a grievance. Apparently, the board agreed with the union as to the provision of the collective bargaining agreement and the propriety of the promotions sought, but asserted *28 that it was precluded from granting the promotions by reason of the county's instructions as set forth in the letter from the county counsel. The plaintiff then instituted the present action seeking an injunction restraining the county from interfering with the personnel practices of the board, an order directing the board to specifically adhere to the provisions of the collective bargaining agreement, and a declaratory judgment that the county does not have the power to assimilate the Board.[1]
Plaintiff contends that the board is legislatively mandated to operate as an autonomous body. N.J.S.A. 44:7-7. It asserts that the various provisions of Title 44 of the New Jersey Statutes are general law which require the continuation of the board as a separate entity, independent of the political control of the county, subject to statewide personnel standards prescribed by the New Jersey Department of Institutions & Agencies (I&A) and not by parochial requirements of the county. Plaintiff further states that the actions of the county are at variance with the uniform personnel standards prescribed by I&A, and this will directly result in the loss of federal welfare funds to the State.
The county,[2] on the other hand, firmly argues that the clear, unambiguous intent and meaning of the act is to enable the county to consolidate the existing board with other county functions in an effort to provide a more efficient, economical and preferred method of service. It is the county's position that that which the union declares to be unlawful is the exact purpose of the reforming legislation set forth in N.J.S.A. 40:41A-1 et seq., particularly 40:41A-25, 26, 27 and 30. The county agrees that no matter what form the *29 administration of welfare services assumes, it must conform to the requirements, rules and regulations promulgated by I&A, including the personnel standards. N.J.S.A. 40:41A-26, 30. The county appears to have made provision for this in § 8.3 of the Code which provides:
Under the direction and supervision of the Director, the division [of welfare] shall have exercise and discharge all of the functions, powers and duties of a County Welfare Board, as prescribed by law. [Emphasis supplied]
N.J.S.A. 40:41A-30 outlines the general powers granted to the new forms of county government under the act. It reads in part:
The grant of powers under this act is intended to be as broad as is consistent with the Constitution of New Jersey and with general law relating to local government. The grant of powers shall be construed as liberally as possible in regard to the county's right to reorganize its own form of government, to reorganize its structure and to alter or abolish its agencies, subject to the general mandate of performing services, whether they be performed by the agency previously established or by a new agency or another department of county government. [Emphasis supplied]
"General law" is defined in N.J.S.A. 40:41A-26:
For the purposes of this act, a "general law" shall be deemed to be such law or part thereof, or heretofore or hereafter enacted, that:
a. Is not inconsistent with this act;
b. Is by its terms applicable to or available to all counties, or;
c. Additional laws or provisions of law whether applicable to all counties or to any category or class of counties, deals with one or more of the following subjects: the administration of the judicial system, education, elections, health, county public authorities, taxation, and finance, and welfare.
N.J.S.A. 40:41A-26 further provides:
Nothing in this act shall be construed to prevent counties from abolishing or consolidating agencies the existence of which has heretofore been mandated by State statute providing that such abolition or consolidation shall not alter the obligation of the county to continue *30 providing the services previously provided by such abolished or consolidated agency.
The intent of this act is to enable a county that has adopted a charter pursuant to this act to cause any duty that has been mandated to it by the Legislature to be performed in the most efficient and expeditious manner, and, absent a clear legislative declaration to the contrary, without regard to organizational, structural or personnel provisions contained in the legislation mandating such duty. [Emphasis supplied]
The welfare statute in question provides in pertinent part:
The board of chosen freeholders of each of the several counties shall cause to be established in the respective counties, where such is not already established, a county welfare board, having as one of its duties the supervision of old age assistance * * *. Such boards are hereby created corporate entities, with power to sue and be sued, to use a common seal and to make by-laws. The members of said welfare board shall be appointed by the boards of chosen freeholders in and for the respective counties * * *. N.J.S.A. 44:7-7.
Does Title 44 of the New Jersey Statutes uncompromisingly call for a "county welfare board"? The answer to this question lies not in the solitary reading of Title 44 but in an analysis of the mandates of Title 44 in light of the subsequent enactment of the act. N.J. State P.B.A. v. Morristown, 65 N.J. 160 (1974).
The act was adopted by the Legislature in response to the findings and reports of the County and Municipal Government Study Commission (Commission) which was created pursuant to L. 1966, c. 28. The Commission was charged with the responsibility to study the structure and function of county and municipal governments and to inquire into the structural and administrative streamlining of county and municipal functions. The Commission published its findings, conclusions and recommendations in the report County Government: Challenge and Change (1969) (Challenge). On page XIX of Challenge the Commission lists its general recommendations, one of which is:
*31 Reorganize themselves [counties] as they see fit, under general law, including the right to consolidate agencies, boards and commissions. [Emphasis in the original]
The Commission further stated:
If the county is to play a wider role in local government, it must be given adequate legal authority. Specifically, we see the need for legal powers in the following areas: (1) internal reorganization  with the power not only to reorganize or consolidate departments but to centralize functions now performed by autonomous boards, agencies and commissions where desirable. [Op. cit. at 17]
Indeed, the Commission itself alludes to the situation at hand in the following manner:
If county government is to run efficiently, the county must have the right to organize and control effectively and economically the services it provides and the agencies providing them. The Freeholders as elected officials must have the authority to see that tax money is being spent with a minimum of waste, inefficiency and duplication. Municipal, state, federal governments have such power and use it to good advantage. Giving the county power to reorganize itself as it sees fit is a prerequisite to efficient government.
This right would not change the basic obligations the county has to the state in any way whatsoever; only the legislature has complete power over counties and municipalities; it could abolish them all today if it wished, and this constitutional power cannot be delegated or abdicated even if the legislature wished to do so. All the proposed grant of authority would give to counties is the right to reorganize themselves within whatever limits the legislature may now or hereafter set. By way of example, it does not give the county the right to stop providing welfare or mosquito control services; it just means that these services can be provided, if the county wishes, in a regular department rather than by an independent agency, the personnel and equipment of which may well duplicate existing services. The counties' obligations remain the same, but they are given some latitude as to the organizational structure they wish to employ in meeting these obligations. [Op. Cit. at 98; emphasis supplied]
Therefore, it would appear that the very Commission that was entrusted with exploring the problems of county government and which recommended various solutions to those problems did envision the restructuring of the then existing welfare *32 boards. Although such a view is not binding on this court, it is to be accorded a good deal of weight. See generally, 2A Sutherland, Statutory Construction (4 ed.) §§ 48.09, 48.11.
Repeals by implication are disfavored. Brewer v. Porch, 53 N.J. 167, 173 (1969); Loboda v. Clark Tp., 40 N.J. 424 (1963). In the absence of an express repealer the legislative intent to effect such a repeal must be clear. N.J. State P.B.A. v. Morristown, supra, 65 N.J. at 164; Dept. of Labor & Industry v. Cruz Construction Co., 45 N.J. 372, 380 (1965). However, when a subsequent legislative enactment clearly conflicts with an earlier statute affecting the same subject matter the courts will find a legislative intent to supersede the earlier law. Montclair v. Stanoyevich, 6 N.J. 479 (1951). The search is for legislative intent. Trap Rock Industries, Inc. v. Sagner, 69 N.J. 599 (1976); Gangemi v. Berry, 25 N.J. 1 (1957). In seeking to discover legislative intent it is to be presumed that the Legislature is aware of all its prior enactments. Matawan v. Monmouth Cty. Tax Bd., 51 N.J. 291 (1968). The new law is to be read in the light of the old law and the evils to be remedied. Key Agency v. Continental Cas. Co., 31 N.J. 98 (1959). To this end, resort must be had to the history and purpose of the law. State v. Brown, 22 N.J. 405 (1956). If new laws drastically change the old ones, this might be an indication of the legislative intent. N.J. State P.B.A. v. Morristown, supra, 65 N.J. at 165; Mahr v. State, 12 N.J. Super. 253, 261 (Ch. Div. 1951).
It appears to me that the clear expressed intent of the Legislature and the meaning of the act is to give the new county governments created under the law the sweeping power to restructure their form as they see fit consistent with the Constitution of New Jersey and general law. The Legislature has gone to great lengths to manifest this intent. See Sutherland, supra, § 56.02. The obligations of the counties as directed by state statutes are not altered in any *33 way. Mandated services must continue. How they are to be administered is to be a decision of the elected county officials. However, if there is a clear legislative declaration to the contrary, the county is not free to abolish a structure directed by the Legislature.
In November 1973 the Commission, in conjunction with the Department of Community Affairs, released a publication entitled Handbook for County Charter Study Commissioners (Handbook). Appendix E to the Handbook, The Optional County Charter Law: A Commentary (Commentary), sets forth the comments of the Commission on the various provisions of the act. The Commentary states:
This bill cannot and does not give counties independence of legislative control; only a constitutional amendment could do this. This bill specifically states in article 2 that the county is the creature of the legislature, and that the legislature is and shall remain completely free to mandate new duties or to change the shape of county government as it sees fit. The only power this bill would give counties vis-a-vis the state is that, once the legislature mandated a duty to the county, the county would be able to perform the duty or service through any agency it wished, unless the legislature clearly stated that a particular agency has to be employed or created. This provision would also apply to agencies now in existence. For example, if a county adopts a charter under this act, it would have the right to decide that instead of an independent welfare board it wished to provide welfare services through a county department of social services, and thus, while it still had to provide the welfare service, it would do so through a department rather than an independent agency if it wished to do so. The advantages of the approach are obvious: it allows the elected leaders to gain closer control over major expenditures, and at the same time it allows for integration of similar agencies  in this case welfare, health and other social services might be merged into one coordinated agency, thus eliminating duplication and providing better services more efficiently. Once again, the county would not have to do this, but it might if it wished to do so. At the same time, the legislature may prevent this from happening in the case of existing agencies simply by passing a bill immediately subsequent to the passage of this bill prohibiting the abolition of certain independent agencies. This would prevent the counties from abolishing whatever agencies the legislature felt it should not. But in any event, the county's basic obligation to perform the task mandated by the legislature does not change, even though they are given latitude to select *34 whatever organizational framework they wish to employ in performing the mandated duty. [at 2-3; emphasis supplied]
It is indeed interesting that the Commission, for the second time, has alluded specifically to the ability of the counties to abolish the county welfare boards under the broad grant of power contained in the act. As stated previously, such an opinion is not binding on a court but it should be given weighty consideration since it is proffered by the body whose findings and recommendations were the bases for the act. Furthermore, in its comment on § 26 of the act N.J.S.A. 40:41A-26 as codified, the Commission stated:
This section tries to state explicitly that while the legislature can mandate duties to the county, the county will have the freedom to decide how those duties will be carried out  except that the legislature can specifically forbid the county from consolidating or abolishing any particular unit heretofore existing, or it may in legislation passed hereafter specify that the county shall perform a task through a particular agency. All this section does, then, is to give the county power to alter, consolidate, or abolish presently existing agencies, whether mandated or not, provided that the county continue to perform the services which have been mandated to that agency and provided that the legislature does not now or hereafter require the existence of such an agency in any particular form. [Commentary at 12; emphasis supplied]
A close comparative reading of the above comment and the actual wording of N.J.S.A. 40:41A-26 discloses that, at least in the mind of the Commission, "a clear legislative declaration to the contrary" is not synonymous with a mandated body. In other words, it appears to be the Commission's view that although in prior legislation the Legislature directed that a particular entity shall be created by each county, such a mandate in itself would not preclude counties under the Law from abolishing the entity. There has to be more.
Plaintiff cites Communication Workers v. Union Cty. Welfare Bd., 126 N.J. Super. 517 (App. Div. 1974) as supportive of its view that the county may not abolish the structure *35 of the county welfare board. In that case unions representing employees of county welfare boards challenged the authority of the Dept. I & A to regulate salary ranges of the welfare board's employees which effectively withdrew this subject from the area of collective bargaining between the unions and the welfare boards. Plaintiffs charged that such authority interfered with the right of collective bargaining guaranteed to public employees under the New Jersey Constitution. The court upheld the authority of the Dept. I & A to regulate the salaries of the employees of the welfare boards pursuant to N.J.S.A. 44:7-6. The opinion no where considers the issue of whether county welfare boards are required to remain autonomous. Even if it did, such a view would not be dispositive of the issues presented here because that case did not consider the effect of the Law on existing legislation and that is what we are concerned with at present.
It is clear that each county is obligated to create "a county welfare board" which is a corporate entity. N.J.S.A. 44:7-7. The members of the welfare boards are appointed by the board of chosen freeholders in each county. Parenthetically, it should be noted that plaintiff's fear that abolition of the "autonomous" welfare board will render the functions of the Board susceptible to the political manipulation of the County is more illusory than factual since the County, through its board of chosen freeholders, has always appointed the members of the Board. It does not appear that the County is afforded any greater opportunity to exert detrimental political pressure on the Board by virtue of the Law. Cf. N.J.S.A. 44:7-8. The welfare boards are obligated to carry out the rules and regulations of the Dept. I & A. N.J.S.A. 44:7-8. Essex Cty. Welfare Bd. v. Dept. Inst. & Agencies, 139 N.J. Super. 47 (App. Div. 1976).
I am of the opinion that the County does have the power to abolish the Board as it presently exists pursuant to the powers bestowed upon it by the Law. It appears to me that this is the clear meaning of the Law and the intent of *36 the Legislature. See Sutherland, supra, § 45.08. Nothing in Title 44 of the New Jersey Statutes compels a different conclusion.[3] Insofar as the two laws are inconsistent, the later one supersedes the earlier one. The fear of the plaintiff that abolition of the independent Board will jeopardize federal welfare funds is not sound.[4] I might add that even if it were true that federal funding might be forfeited by reason of the County's abolition of the Board, such an effect would only be evidentiary and not conclusive in construing both the meaning of the Law and the intent of the Legislature. It is my understanding that the state plan for welfare services which must be approved by the federal government before this State received federal assistance can simply be amended to make provision for any county that abolishes a county welfare board pursuant to the Law. See 42 U.S.C.A. §§ 301, 601, 1201, 1351.
An order in conformity herewith shall be submitted.
NOTES
[1] The interlocutory injunction sought by the union was denied by the court at a prior hearing held on the return date of an order to show cause seeking such relief. R. 4:52-1.
[2] The board takes no position in this controversy. The board's attorney stated at oral argument that it would abide by the court's interpretation of the statutes involved.
[3] This does not mean that I necessarily subscribe to the Commission's interpretation of "a clear legislative declaration to the contrary" as noted above. What constitutes such a legislative declaration so as to withdraw a particular statute from the operation of the Law must be determined on a case by case basis.
[4] This determination was made by the court at the hearing referred to n. 1, supra.