STOP THE PAY HIKES COMMITTEE, ALICE KRAMEDJIAN, FLORENCE IPPOLITO, MARTHA ZATOURIAN, C. DON GOTTWERTH AND GLORIA WILLIAMS, PLAINTIFFS, v. TOWN COUNCIL OF THE TOWN OF IRVINGTON, ROBERT MILLER, MAYOR OF THE TOWN OF IRVINGTON, VINCENT J. FOTI, JR., DIRECTOR AND COMPTROLLER, DEPARTMENT OF REVENUE AND FINANCE; HARRY STEVENSON, MUNICIPAL TREASURER; AND VALENTINE MEISSNER, TOWN CLERK OF THE TOWN OF IRVINGTON, DEFENDANTS.

Superior Court of New Jersey
Law Division

February 5, 1979.

198

*Mr. Gary D. Gordon* for plaintiffs (American Civil Liberties Union, attorneys).

*Mr. Henry E. Rzemieniewski,* Irvington Town attorney, for defendants.

FARLEY, J. S. C. This is a referendum case. Plaintiff commenced action in lieu of prerogative writ seeking relief in the nature of *mandamus* to compel defendant Irvington Town Clerk, to file a petition of voters and place on the ballot a referendum concerning a portion of salary ordinance adopted by the Irvington Town Council.

The factual background is as follows. The Town of Irvington is organized under the Optional Municipal Charter Law (Faulkner Act), *N. J. S. A.* 40:69A–1 *et seq.* On October 12, 1978 Ordinance MC #2549, entitled "An Ordinance Establishing Salary Ranges for Employees and Officials of the Town of Irvington" (hereinafter referred to as the salary ordinance) was signed by the Mayor of Irvington. It was

published on October 19, 1978 in a local newspaper. A committee challenging the propriety of a portion of the salary ordinance was established, called "Stop the Pay Hikes Committee" (hereinafter the committee). The committee was advised the deadline for filing a petition for a referendum on the salary ordinance was November 7, 1978. On that date it filed petitions, including the names of 1,244 registered voters, in protest of the adoption of the salary ordinance who petitioned that certain of the salary increases provided in the ordinance be submitted to the voters through referendum.

The challenge to the salary ordinance was to those wage increases provided for the mayor, chief executives, council members, officers, administrators, managerial executives, elected officials or any manager, executive or confidential employee as defined under *N. J. S. A.* 34:13A-3. On November 22, 1978 the town clerk ruled that the petition was deficient. The alleged deficiencies were that the petition did not comply with statutory requirements of *N. J. S. A.* 40: 69A-186. Moreover, the petition was alleged to be so vague and confusing as to be legally defective. Thereafter, on November 27, and December 1, 1978 the committee made an attempt to comply with the alleged deficiencies. This included an effort to add a "verification" to the petitions and correct other deficiencies under the referendum section of the Faulkner Act.

On December 1, 1978, notwithstanding the "corrective amendments" by the committee, the town clerk submitted, pursuant to *N. J. S. A.* 40:69A-187, a certificate that the petition remained insufficient in both substance and form and set forth particulars thereon. Thereafter, the committee commenced this action against the town council, Mayor and other municipal officials of Irvington (collectively called "Irvington"). On December 4, 1978 a court order stayed the implementation of the salary ordinance pending the court's determination of this case.

Two legal issues are before the court. First, which of two statutes, namely, *N. J. S. A.* 40A:9–165 or *N. J. S. A.* 40: 69A–184 *et seq.*, or both, control the form and substance relating to this potential referendum. Second, is the referendum petition so vague and confusing as to be deficient as a matter of law? The court addresses these issues.

Irvington argues that the provisions of the Faulkner Act govern a potential referendum relating to the salary ordinance. Irvington acknowledges that *N. J. S. A.* 40A:9–165 is a specific statute relating to salary ordinances. However, it asserts that since this statute is silent on matters of form and procedure, including the question of verification of petitions, § 165 must be implemented by those specific provisions of the Faulkner Act which relate to referenda, namely, *N. J. S. A.* 40:69A–184 *et seq.*

The Faulkner Act includes a broad range of statutes containing a number of optional municipal government plans, each containing its own governmental procedures. Additionally, the act contains various provisions of general application entitled "Additional Provisions Common to Optional Plans" (Article 17). Within these provisions are included, among others, "Election in General," "Local Legislation," "Recall," "Wards" and the subject of this inquiry, "Initiative and Referendum."

The provisions of the Faulkner Act concerning initiative and referendum are set forth in *N. J. S. A.* 40:69A–184 to 196, inclusive. The controversy essentially relates to § 186, which states:

All petition papers circulated for the purposes of an initiative or referendum shall be uniform in size and style. Initiative petition papers shall contain the full text of the proposed ordinance. The signatures to initiative or referendum petitions need not all be appended to one paper, but to each separate petition there shall be attached a statement of the circulator thereof as provided by this section. Each signer of any such petition paper shall sign his name in ink or indelible pencil and shall indicate after his name his place of residence by street and number, or other description sufficient to identify the place. There shall appear on each petition paper the

names and addresses of five voters, designated as the Committee of the Petitioners, who shall be regarded as responsible for the circulation and filing of the petition and for its possible withdrawal as hereinafter provided. *Attached to each separate petition paper there shall be an affidavit of the circulator thereof that he, and he only, personally circulated the foregoing paper, that all the signatures appended thereto were made in his presence, and that he believes them to be the genuine signatures of the persons whose names they purport to be.* [Emphasis supplied]

Section 188 of the Faulkner Act sets forth procedures on amending a petition after an initial determination of insufficiency. This section has no great significance in this case, as both the initial and amended petition were ruled insufficient. The basic thrust of Irvington's argument is that the committee failed to comply with § 186 and thereafter did not correct the insufficiency pursuant to § 188.

The committee rejects Irvington's contention. It asserts that those provisions of the Faulkner Act relating to referenda are not controlling. The committee asserts that *N. J. S. A.* 40A:9–165 is controlling with respect to this dispute. This statute relates specifically to salary ordinances, including the right to redress by referendum. The requirements for referendum under *N. J. S. A.* 40A:9–165 are not nearly as burdensome as under the Faulkner Act. The statute has no requirement that the petition be verified or certified. It is actually silent on that question. Essentially, it calls for petitions equal in number to at least 5% of the registered voters as the predicate for a referendum. The committee argues that all of the deficiencies cited by the town clerk are irrelevant, as the matter is governed by *N. J. S. A.* 40A:9–165 and not §§ 186 and 188 of the Faulkner Act.

*N. J. S. A.* 40A:9–165 is a section of general law relating to municipalities and counties. It states that a referendum can be initiated when, within 20 days after publication of the ordinance after final passage, a "petition" signed by 5% of the registered voters protest the salary ordinance. The referendum is limited to an increase in wages to "elective officials or any managerial executive or confidential employee."

In such a challenge by referendum the salary ordinance, as to those parties, remains inoperative until approved by a majority of the voters voting on such question at the next general election.

There is some convincing authority relating to similar statutory construction problems concerning referenda. The case of *In re Passaic,* 94 *N. J. L.* 384 (Sup. Ct. 1920), involves a very similar factual context relating to the predecessor statutes to *N. J. S. A.* 40:69A–184 *et seq.* (*L.* 1911, *c.* 221) and *N. J. S. A.* 40A:9–165. In that case an ordinance was adopted increasing the salaries of municipal employees. At that time Passaic was governed under the Walsh Act, the predecessor to the Faulkner Act. The Walsh Act, like the Faulkner Act, has a general section outlining the procedures relating to referendum. It required the certification of petitions as a condition to placing a question on referendum. However, the predecessor to *N. J. S. A.* 40A:9–165, *L.* 1920, *c.* 40, p. 83 which was addressed to salary ordinances, including referendum thereon, did not require the certification of petitions.

The uncertified petitions protesting the salary ordinance were filed with the Passaic municipal clerk, but rejected as deficient under the Walsh Act for lack of certification. The issue then before the court, as in this case, was simply which statute controlled. The court ruled against the application of the Walsh Act. It stated that the 1920 law, now *N. J. S. A.* 40A:9–165, was later in time and was not in conflict with the earlier Walsh Act. Since the latter statute was clear and did not require certification, the court ruled that no certification was necessary. In arriving at its opinion the court analyzed the interrelationship of the two statutes and stated:

All efforts and rules of construction are designed to discover the legislative intent, and, where that is specific and plain, it requires no effort at harmonizing with previously expressed legislative policies, for the reason that such an attempt would be tantamount not to construction, but to judicial legislation. In this instance the Legisla-

ture had before it a body of statutory law which it proposed to supplement in a certain particular only, and it must be assumed that the legislative body was fully conversant with the public policy, which in the respects to which I have adverted, made expedient the attaching of an affidavit to the petitions filed for those purposes. yet the act under consideration provides no such detail, and the inference results that the legislature intended none, for if it intended to supplement the petition with an affidavit, it would have specifically required it or would have referred to the sections of the main act wherein provision is made for such affidavit. Either method would require little change of verbiage in the act, and the fact that such a provision or reference was not incorporated in the act leads to the inference that it was not intended to include it. Thus it has been held that where in a subsequent statute on the same subject as a former one, the legislature uses different language in the same connection, the courts must presume that a change of the law was intended. [at 386, 387]

The case of *Lawrence v. Butcher*, 130 *N. J. Super.* 209 (App. Div. 1974), is germane to the issues herein. It concerned a referendum question, involving a Faulkner Act municipality, as to what percentage of municipal voters had to sign the petition to place the referendum on the ballot. In *Lawrence* there was a conflict between *N. J. S. A.* 40:69A–185 and *N. J. S. A.* 40A:9–165. The former statute (Faulkner Act) required signatures of 25% of the registered voters, whereas the latter statute only required 5% of such voters. The court, in its analysis, concluded that municipalities organized under the Faulkner Act are subject to "all applicable provisions of general law" as well as provisions common to their optional plan of government (see *N. J. S. A.* 40:69A–26, 28). It is clear from the court's opinion that *N. J. S. A.* 40A:9–165 applies to all municipalities and not just those governed under the Faulkner Act. The court concluded (at 213) that "the Legislature intended to deal with the subject matter of the enactment of salary ordinances in a uniform way in all municipalities." The court concluded as a matter of statutory interpretation that where a specific statute and a general statute do not coalesce without some friction, the following rule of construction applies:

Where statutes in some apparent conflict relate to the same subject matter, it is the duty of the court to construe them together as a unitary and harmonious whole insofar as that may be possible in order that each may be fully effective. *Clifton v. Passaic Cty. Bd. of Taxa.*, 28 *N. J.* 411, 421 (1958). The more specific applicability of *N. J. S. A.* 40A:9-165 to the subject matter of the ordinance brings into play the well recognized principle of statutory construction that the provisions of a specific statute will prevail over a general statute. *Kingsley v. Wes Outdoor Advertising Co.*, 55 *N. J.* 336, 339 (1970); *Goff v. Hunt*, 6 *N. J.* 600 (1951); 2A *Sutherland Statutory Construction*, § 51.05 at 315 (1973).

The statutes may thus be construed in harmony by regarding *N. J. S. A.* 40:69A-185 as dealing with ordinances in general, with the exception of salary ordinances which are governed by the provisions of *N. J. S. A.* 40A:9-165. [at 212]

In *Steger v. Schellenger,* 33 *N. J.* 293 (1960), the court had before it a case which involved a dispute between a specific and general statute. Each contained different requirements on verification of petitions on a referendum issue. In that case a petition was filed under *N. J. S. A.* 40:79-1 *et seq.* to compel a special election on whether to adopt a specific form of municipal government. Under *N. J. S. A.* 40:80-1 there was no requirement that the petition be verified. However, it was argued that this statute was subject to a section of the general election law, *N. J. S. A.* 19:13-7, which required verification of petitions relating to nomination by petition. The court ruled that *N. J. S. A.* 40:80-1, dealing with change of a form of government and which included a procedure for referendum, was clear and that the Legislature intended no verification. The court recognized that more burdensome or prohibitive requirements may prevail under *Title 19* of the *Revised Statutes,* but this did not conflict with the literal meaning of the specific statute. The court concluded:

Moreover, the nature of the subject, the manner and scope of the verification must vary with the context, and what is appropriate in one setting may be burdensome or prohibitive in another. [at p. 295]

Similarly, *Anthony v. Rea,* 22 *N. J. Super.* 452 (App. Div. 1952), involved a referendum question on whether the

sale of alcoholic beverages should be permitted on Sundays. A specific statute, *N. J. S. A.* 33:1–47, outlined the procedure for placing such a matter before the voters. There was no requirement for verification of the petition. However, it was asserted that a statute under the general election law required petitions for the submission of public questions to the electorate be verified. It was further contended that *N. J. S. A.* 33:1–47 adopts by reference the general election law requiring verification. The court disagreed. It concluded that since *N. J. S. A.* 33:1–47 contained no requirement for verification, the inference was that the Legislature intended no such requirement.

The sophistry of the Irvington argument can be seen by hypothetical illustration. There are 567 municipalities in New Jersey. Eighty-seven are governed pursuant to the Faulkner Act Evid. *R.* 9.(2e). Irvington's position is that *N. J. S. A.* 40A:9–165 must be implemented by the referendum procedures contained in *N. J. S. A.* 40:69A–184 *et seq.* If this argument were to prevail, it would create a two-tier referendum procedure with relation to salary ordinances. Municipalities not governed by the Faulkner Act would apparently be governed by *N. J. S. A.* 40A:9–165, whereas Faulkner Act municipalities would be governed by the provision of *N. J. S. A.* 40:69A–184 *et seq.* It is difficult to believe that the Legislature intended such a dichotomy. Moreover, it is apparent that under *N. J. S. A.* 40:69A–26 Faulkner Act municipalities are subject to "all applicable provisions of the general law." See also, *Lawrence v. Butcher, supra.*

Irvington also contends that the petition is so vague and misleading as to be legally insufficient to warrant a referendum. The petition in its entirety states:

PETITION PURSUANT TO *N. J. S. A.* 40A:9–165
We, the undersigned, being registered voters in the Town of Irvington, New Jersey, do hereby protest the passage of the following ordinance passed on 10/12/78 and hereby petition the Mayor, Council of the Town of Irvington and especially the TOWN CLERK (pur-

suant to *N. J. S. A.* 40A:9–165) to place the following ordinance and resolution before the public. We herewith request that this ordinance and resolution shall be adopted at an election by a majority of the voters voting on the proposition at a special or general election in 1979 as provided for in Title 19 of R. S. and 40A:9–165.

THIS PETITION IS SUBMITTED IN PROTEST OF THE FOLLOWING ORDINANCE:

ORDINANCE # 2549 — An ordinance establishing salary ranges for employees and officials of the Town of Irvington. We protest that portion thereof which provides an increase in salaries, wages or compensation of mayor, chief executives, officers, administrators, managerial executives, council members, elected officials, or ANY manager, executive or confidential employee as defined in Section 3 of N. J. Employer-Employee Relations Act. P. L. 1941 C 100 (C34: 13A–3).

The contention that the petition is vague and misleading is based on two assertions. First, Irvington asserts the language in the first paragraph of the petition is so misleading as to prevent voters who signed the petition from actually understanding the purport of what they were signing. The court agrees that this language is somewhat ambiguous. However, the sufficiency of the petition cannot be measured except in its entirety. It is apparent that any voter reading the entire petition was adequately informed that the basic thrust of the petition was to challenge certain wage increases adopted by Irvington Ordinance MC 2549. Certainly, the language is not so misleading as to justify the summary dismissal of this potential referendum. Also, it is well recognized that the right to referendum is a democratic ideal. Moreover, provisions relating to a referendum should be liberally construed so as to effectuate, facilitate and encourage voters to participate in government. It is not the policy of our law to frustrate the right of voters to seek democratic redress, as provided for through referendum. *D'Ascensio v. Benjamin,* 137 *N. J. Super.* 155, 163 (Ch. Div. 1975); *Sparta Tp. v. Spillane,* 125 *N. J. Super.* 519, 523 (App. Div. 1973).

Irvington's next argument is that the petition circulated was vague and misleading, since it did not specify with particularity what wage increases or job classifications were the subject of the proposed referendum. The petition protested the wage increases to the "mayor, chief executives, officers, administrators, managerial executives, council members, elected officials or any manager, executive or confidential employee." Irvington contends that this sweeping generalization of job classifications renders the petition legally defective. Such generalizations, Irvington asserts, would prevent signers of the petition from knowing what wage increases or job classifications were being challenged. This question is novel.

 In New Jersey, unlike most States, there is no constitutional right to referendum. Such right is purely statutory. *Epstein v. Long,* 133 *N. J. Super.* 590, 602 (Law Div. 1975); *Smith v. Livingston Tp.,* 106 *N. J. Super.* 444, 453 (Ch. Div. 1969), aff'd 54 *N. J.* 525 (1969); *Eatontown v. Danskin,* 121 *N. J. Super.* 68, 76 (Law Div. 1972).

 We must, thus, turn to *N. J. S. A.* 40A:9–165 which creates the statutory right to referendum on a salary ordinance. Section 165 is explicit and limits a referendum on any wage increase to elective officials or any managerial executive or confidential employee. The statute further directs that the latter two job classifications are to be defined pursuant to § 3 of the New Jersey Employer-Employee Relation Act (*N. J. S. A.* 34:13A–3). Significantly, § 165 is silent as to whether specific wage increases or job classifications must be set forth in the contents of the petition. Since the statute is silent, the court finds no compelling reason to impose such an onerous condition by way of judicial construction when the Legislature has not so provided. *State v. Hatch,* 64 *N. J.* 179, 186 (1973); *J. C. Chap. Prop. Owner's, etc., Ass'n v. City Council,* 55 *N. J.* 86, 100 (1969).

However, the committee's petition directs its protest to certain job classifications not included in § 165, namely, "chief executives," "officers," "administrators" and "manager." Since there is no statutory authority to include these classi-

fications, except where potentially a member of one of those classifications might merge into a specifically enumerated classification, these job classifications cannot be included in the referendum.

The result is that the referendum concerning wage increases must be limited to the mayor, council members, other elected officials, if any, managerial executives and confidential employees.

■ The lack of specificity argument asserted by Irvington as to these classifications is not valid. Certainly the specificity argument cannot be sustained as to the mayor, council members and other elected officials, if any, since these persons are clearly ascertainable. Moreover, the remaining two classifications, namely, managerial executives and confidential employees, are subject to statutory definition pursuant to *N. J. S. A.* 34:13A-3. To follow Irvington's logic would be to impose on the committee, who are lay citizens, the duty to specify exactly what job classifications in the ordinance are included in the more generic statutory classifications in § 165. Realistically, this would be a hardship to impose upon the committee. It would be difficult for any committee, within the very narrow time parameters of § 165, to make technical judgments as to what specific job classifications in the salary ordinance were included in the titles of managerial executives or confidential employees.

■ We turn to *N. J. S. A.* 40A:9-167, which sets forth procedures for the preparation of a ballot for referendum. This statute does not become operative until a municipality is required to submit to the voters a referendum on wage increases relating to a specific salary ordinance or portion thereof. Section 167 includes the same job classifications contained in § 165 and, after enumerating them, states "as designated." We are of the opinion that § 167 of the general law concerning salary ordinances, including referenda thereon, obligates the town clerk or any other qualified officer, to make a determination of what specific job titles in Ordinance MC 2549 will be included in the referendum

protesting the wage increases to the mayor, council members, elected officials, if any, managerial executives and confidential employees. This procedure makes more sense, for the town clerk certainly has the special acumen and vital information necessary to evaluate and make such a determination. Thus, we find nothing vague or misleading about the committee attempting to compel a referendum on all those job classifications enumerated in *N. J. S. A.* 40A:9–165. This result would certainly seem consistent with the spirit and purpose of the statutory right to referendum. See *D'Ascensio* and *Sparta Tp.*, both *supra*.

In conclusion, the court finds that the petition and referendum are controlled by *N. J. S. A.* 40A:9–165 *et seq.* and, further, that the petition is legally sufficient in both substance and form, except for those job classifications not included in § 165. The matter should proceed to referendum within the ruling of this decision.

An appropriate order should be submitted.