168 N.J. Super. 459 (1979)
403 A.2d 496
SAMUEL J. ANGELO, PLAINTIFF,
v.
PETER SHAPIRO, COUNTY EXECUTIVE OF ESSEX COUNTY, THE COUNTY OF ESSEX, A BODY POLITIC OF THE STATE OF NEW JERSEY, AND HERBERT GLADSTONE, DIRECTOR OF PERSONNEL DEPARTMENT OF THE COUNTY OF ESSEX, DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided May 2, 1979.
*460 Messrs. Harkavy, Goldman, Goldman, Caprio & Levy for plaintiff (Mr. Martin S. Goldman, of counsel).
Mr. Peter G. Stewart, Essex County Counsel, and Mr. Paul T. Von Nessi, Assistant County Counsel for defendants.
YANOFF, J.S.C.
This opinion is an expansion of remarks in an oral opinion rendered May 2, 1979.
The issue raised here involves the interaction between the Optional Municipal Charter Act (N.J.S.A. 40:41A-1 et *461 seq.) (hereinafter "Charter Act"), and a statute under which a county officer is appointed by the county for a fixed term (N.J.S.A. 40A:9-27).
In this case Samuel Angelo was designated under the cited statute Treasurer of the County of Essex by its freeholders, to complete a three-year term upon the death of the Treasurer. Subsequently, pursuant to petition and referendum (see Citizens for Charter Change in Essex Cty. v. Caputo, 136 N.J. Super. 424 (App. Div. 1975); certif. den. 74 N.J. 268, 269 (1975) appeal after remand, 151 N.J. Super. 286 (1977) certif. den. 75 N.J. 527 (1977) the County of Essex opted for the County Executive Plan described in N.J.S.A. 40:41A-31. The new form of government came into effect in 1978. N.J.S.A. 40:41A-37 makes provision for an Administrative Code (hereinafter "Code"), which the Freeholders adopted by ordinance, effective May 1, 1979. The Code comprehensively reorganizes the entire county government, including the freeholders themselves and all county employees. Article 14.3 of the Code, as amended, provides:

Offices Continued, etc. All offices, positions, and employments, which are continued or reestablished by this code are transferred to the respective departments, offices, and agencies to which their functions are allocated and assigned by this code. The terms of all incumbents heretofore appointed for a fixed term to such offices, positions, and employments and the terms of all members of existing boards, agencies, commissions or authorities shall terminate as of the effective date of this code, except that such officers or members of the boards, commissions, and authorities that are continued may continue to serve until appointments and qualification of their successors, or may be reappointed to serve out the unexpired portion of their terms.
Plaintiff was advised by the County Executive that his employment thus terminated by the Code would not be renewed. The result was this prerogative writ action.
The pertinent provisions of the Charter Act, N.J.S.A. 40:41A-26, 27, read:
*462 26. General law. For the purposes of this act, a `general law' shall be deemed to be such law or part thereof, heretofore or hereafter enacted, that:
a. Is not inconsistent with this act; and
b. Is by its terms applicable to or available to all counties, or;
c. Is applicable to all counties or to any category or class of counties, and deals with one or more of the following subjects: the administration of the judicial system, education, elections, health, county public authorities, taxation, and finance, and welfare.
Nothing in this act shall be construed to prevent counties from abolishing or consolidating agencies the existence of which has heretofore been mandated by State statute providing that such abolition or consolidation shall not alter the obligation of the county to continue providing the services previously provided by such abolished or consolidated agency.

* * * * * * * *
27. County powers generally. Any county that has adopted a charter pursuant to this act may, subject to the provisions of such charter, general law and the State Constitution:
a. Organize and regulate its internal affairs; create, alter and abolish offices, positions and employments and define the functions, powers and duties thereof; establish qualifications for persons holding offices, positions and employments; and provide for the manner of their appointment and removal and for their term, tenure and compensation.
Six cases have been determined under § 26; this is the first case under § 27.
American Fed'n of State, Cty. and Mun. Employees v. Hudson Welfare Bd., 141 N.J. Super. 25 (Ch. Div. 1976), held that a county executive elected pursuant to the Charter Act was empowered to terminate a welfare board as an autonomous body and consolidate it with other county functions. Union Cty. v. State, 149 N.J. Super. 399 (Law Div. 1977), determined that a county which had adopted a new form of government under the Charter Act could abolish the County Mosquito Commission. Union County Park Comm'n v. County of Union Cty., 154 N.J. Super. 213 (Law Div. 1976), aff'd 154 N.J. Super. 125 (App. Div. 1977), certif. den. 75 N.J. 531 (1977), ruled that under the Charter Act a county could abolish the County Park Commission. In all these cases it was held that the reservation *463 as to general law in § 26 did not prevent merger of the agencies involved, so long as the county made provision for continuing their functions.
Contrasted with these should be:

In re Salaries, Probation Officers Hudson Cty., 158 N.J. Super. 363 (App. Div. 1978), certif. den. 78 N.J. 339 (1978), which held that a county could not, under the Charter Act remove the officers of the probation department from the supervision of the county judges;

Board of Trustees, Mercer Cty. Commun. College v. Sypek, 160 N.J. Super. 452 (App. Div. 1978), certif. den. 78 N.J. 327 (1978), holding that a county operating under the Charter Act could not terminate a community college as an independent entity;

State v. Hudson Cty., 161 N.J. Super. 29 (Ch. Div. 1978), ruling that a county which assumed direct administration of the welfare program under the Charter Act could not ignore the effect of an employment and classification regulation previously promulgated by the Division of Public Welfare pursuant to statutory and decisional standards for "categorical assistance programs."
In comparing cases which have held "agencies" subject to consolidation with those which ruled that "units" were immune from reorganization under the Charter Act, one must consider the language of § 28 which reads in part: "Nothing in this act shall be construed to impair or diminish or infringe on the powers and duties of municipalities and other units of government under the general law of this State." "Units of government" under these provisions, read in conjunction with § 26, supra, are thus put outside the scope of the Charter Act.
Separation of those cases in which a county, under Charter Act powers, may merge an agency of government, from those in which it may not, requires a weighing of the legislative policy which motivated the establishment of a discrete agency against the legislative policy which empowers a county under the Charter Act to merge the agency into the *464 county structure. The reasons on each side may be closely balanced.
In this case there is no substantial problem in determining which objective the Legislature considered more important. An individual officeholder is not a "unit of government." Section 27 which confers power to abolish officers and employments upon a county and, therefore, upon a county executive, pursuant to appropriate county ordinance, does not contain the limitations of § 26 that the functions must be continued even if the agencies are abolished, or the possible exemption from the Charter Act as "other units of government" under § 28, supra, when read in conjunction with the definition of "General Law" in § 26.
Very persuasive is the fact that the quoted language from § 27 is taken almost verbatim from the Faulkner Act (N.J.S.A. 40:69A-29(a)). In McCartney v. Franco, 87 N.J. Super. 292 (App. Div. 1965); cf. Ream v. Kuhlman, 112 N.J. Super. 175, 191-194 (App. Div. 1970); Hutt v. Robbins, 98 N.J. Super. 99, 105 (App. Div. 1967) certif. den. 51 N.J. 185 (1968), it was held that a county adopting the Faulkner Act had the right to terminate the office of an assessor on a reorganization pursuant to that statute. In my view, this case is squarely in point. Cf. Beirne v. Gangemi, 74 N.J. Super. 55 (App. Div. 1962) certif. den. 38 N.J. 307 (1962). The Legislature, in adopting the Charter Act, is considered to have done so with knowledge of the judicial interpretations of language which it took from other statutes, in this case the Faulkner Act, and to have intended that the interpretation given to the earlier language be given also to the language later enacted (Quaremba v. Allan, 67 N.J. 1, 14 (1975); State v. J.C.S., 156 N.J. Super. 66, 69-70 (App. Div. 1978)). Although this is well-nigh conclusive, it must be noted that the reorganization of Essex County pursuant to the Charter Act was thorough and complete. The office of Treasurer was retained in name but changed in function and made part of a Department of Revenue and Finance. The Treasurer under the Code is strikingly less *465 important in the functioning of the county government than he was before. In this respect what happened in this case is very similar to the municipal reorganization in McCartney, supra. Moreover, it shows that the reorganization was not a pretense to terminate the position of plaintiff  although, in my view, the County Executive is under no obligation to continue plaintiff's services for any reason  and that there was a genuine reorganization under which a new and different position was created.
Finally, I deal with plaintiff's contention that the Legislature, by N.J.S.A. 40A:9-27, intended to make the County Treasurer the guardian of county finances; that implied repealers are not favored, and therefore that he is immune from the consequences of the municipal reorganization. As to this I think I am concluded by the holding of the Appellate Division in McCartney, supra. Theoretical analysis leads one to the same conclusion. As the Court said in N.J. State P.B.A. v. Morristown, 65 N.J. 160 (1974):
Repeals by implication are not favored. In the absence of an express repealer, there must be a clear showing of legislative intent to effect a repeal [citations omitted]. This doctrine, however, is merely an aid in ascertaining legislative intent. [Id. at 164]
The court's basic objective in construing legislation is to determine legislative intent. See Union Cty. Freeholder Bd. v. Union Cty. Park Comm'n, 41 N.J. 333, 337 (1964). Where later legislation seems inconsistent with earlier legislation, reliance upon a presumption against repeal by implication as a mechanical solution of the problem is not sufficient. The fundamental problem of determining legislative intent by comparing the two statutes and their functions, still remains. See Brewer v. Porch, 53 N.J. 167 (1969). Here, there is no question of repealer of N.J.S.A. 40A:9-27 since it remains in force in non-Charter Act counties. The issue is whether the legislature intended to exempt a county treasurer from operation of the Charter Act. The broad powers conferred by the *466 Charter Act strongly suggest that it did not. Section 30 reads in part: "The grant of powers under this act is intended to be as broad as is consistent with the constitution of New Jersey and with general law relating to local government." Clearly, the Charter Act is not intended to modify such things as the laws of contracts or torts or civil service laws (N.J.S.A. 40:41A-129). But it is intended to permit sweeping change in county organization.
The course of decision under N.J.S.A. 40:41A-26, already outlined, indicates that the Charter Act empowers a county to eliminate agencies with ancient and well-established organizations. The Supreme Court, by denying certification in cases where elimination of an "agency" was sustained, and in cases where the elimination of an "unit" was refused (see Union County Park Comm'n; In re Salaries, Hudson Cty. Probation Officers, and Mercer Cty. Commun. College, all supra) has, at least inferentially, indicated approval of the place where the line between the two types of cases has been drawn. If it is proper for a county, acting through its executive, to consolidate such agencies as welfare boards and park commissions into its general structure, it would seem to follow a fortiori that individual positions may be eliminated.