177 N.J. Super. 87 (1980)
424 A.2d 1203
PETER SHAPIRO, ESSEX COUNTY EXECUTIVE, PLAINTIFF,
v.
ESSEX COUNTY BOARD OF CHOSEN FREEHOLDERS, DEFENDANT.
Superior Court of New Jersey, Law Division Essex County.
Decided November 12, 1980.
*90 David H. Ben-Asher for plaintiff.
Thomas M. McCormack for defendant.
Paul T. Koenig, Jr. for amicus curiae Mercer County Executive.
William L. Boyan for amicus curiae Mercer County Board of Chosen Freeholders.
BAIME, J.D.C. (temporarily assigned).
This case involves a question of first impression. At issue is whether the Optional County Charter Law (Charter Law), N.J.S.A. 40:41A-1 et seq., authorizes the county executive or the board of freeholders (board) to determine the salaries of county employees. Plaintiff contends that the statutory scheme empowers the county executive to set salaries. Defendant argues that the authority to fix the salaries of county personnel remains with the board.
The facts are not in dispute and are essentially a matter of public record. Essex County adopted the County Executive form of government on November 7, 1978. Both plaintiff and defendant assumed office under this new plan on November 13, 1978. From that date until April 23, 1980 plaintiff set the salaries of all administrative employees other than himself, the *91 county administrator, department heads and the board of freeholders, this task being expressly granted to defendant.[1] On March 26, 1980 defendant enacted a comprehensive salary ordinance.[2] This ordinance purported to establish the salaries of all administrative employees. Plaintiff vetoed this ordinance on April 15, 1980. Defendant subsequently overrode plaintiff's veto. Plaintiff thereupon commenced this suit seeking a declaratory judgment that the authority to set salaries is vested in the county executive. Both plaintiff and defendant seek summary judgment.
In support of his motion plaintiff contends that having the salaries of employees determined by the county executive fulfills the major purpose of the Charter Law, which is to create a more efficient and accountable government. Plaintiff argues that if the salaries are determined by the board, the county executive's duty to negotiate the contracts of employees, specifically mandated in N.J.S.A. 40:41A-36(i), would be circumvented. Plaintiff further contends that should the board be permitted to set salaries, it would be able to dismiss county employees, thereby accomplishing indirectly that which it is prohibited from doing directly.[3] Plaintiff's final argument is that the general statute relied upon by the board, N.J.S.A. 40A:9-10, which authorizes defendant to establish salary levels, is inapplicable since it is inconsistent with the Charter Law. The Charter Law contains a provision whereby the board is made responsible for setting the salaries for itself, the county executive, the county administrator and all department heads. N.J.S.A. 40:41A-100(d). Plaintiff contends that by designating those employees for whom the board may set salaries, all others are implicitly excluded from its control.
*92 In support of its motion defendant contends that the authority to set salaries is vested in the board by virtue of its inherent power to adopt ordinances and resolutions it deems necessary for the good governance of the county.[4]N.J.S.A. 40:41A-41(b). Defendant argues that the setting of salaries is a totally legislative function, and that it, therefore, is within its purview. It further argues that the establishment of salary levels by plaintiff is contrary to the goal of a more accountable county government. It is contended by defendant that only some 50 to 70 of the 7,000 county employees would be affected by this decision, all others being represented by bargaining units in contract negotiations.
The novel question presented here is one of statutory construction. It is to be noted at the outset that the language of the Charter Law is not without its ambiguities. Nevertheless, I find that plaintiff is entitled to summary judgment. My conclusion in this regard is grounded upon what I perceive to be the plain legislative design which is to vest in the county executive the sole authority to effectuate and administer legislative policy as set by the board. Further, public policy considerations militate strongly in favor of the county executive's position.

I
Certain prefatory comments are in order. It is axiomatic that in construing a statute the role of the judiciary is to *93 give effect to the intention of the Legislature. Monmouth Cty. v. Wissell, 68 N.J. 35 (1975); Mason v. Civil Service Comm'n, 51 N.J. 115 (1968); Asbury Park Bd. of Ed. v. Hoek, 38 N.J. 213 (1962); Harvey v. Essex Cty. Freeholder Bd., 30 N.J. 381 (1959). The legislative intent may be implied from the language of a statute or inferred on grounds of policy or reasonableness. Franklin Estate, Inc. v. Edison Tp., 142 N.J. Super. 179 (App. Div.), aff'd 73 N.J. 462 (1976); Harvey v. Essex Cty. Freeholders Bd., supra 30 N.J. at 392. In seeking the intent of the Legislature, any history which may be of aid must be consulted. State v. Madden, 61 N.J. 377 (1972). In this regard, the reports of special committees or commissions appointed to study and suggest legislation are considered valuable aids. American Fed'n of State, Cty., and Mun. Emps. v. Hudson Cty. Welfare Bd., 141 N.J. Super. 25, 35 (Ch.Div. 1976); 2A Sutherland, Statutory Construction, § 48.11.
In this context it is significant that the legislative design in enacting the Charter Law was to provide each county with the flexibility to choose the form of government best suited to its characteristics, needs and preferences.[5] The legislative purpose underlying the County Executive plan was to assure the centralized professional administration of county government by vesting in a single elected official the power to administratively direct its operations.[6]
It is against this backdrop that the statutory scheme must be construed. The Charter Law contains a clear statement on the subject of determining salaries only with reference to several high level positions. The board is responsible for fixing the compensation of its members, the county executive, the county administrator, and all department heads. N.J.S.A. 40:41A-100(d). *94 No mention is made, either in the statutes or in the legislative history, as to which governmental division is to establish the salaries of other county employees.
Under the expressio unius doctrine, it is generally held that where the Legislature makes express mention of one thing, the exclusion of others is implied. Continental Cas. Co. v. U.S., 314 U.S. 527, 62 S.Ct. 393, 86 L.Ed. 426 (1942); Gangemi v. Berry, 25 N.J. 1, 11 (1957). Thus, by designating specific high-level positions for which the board is expressly empowered to set salaries, a strong inference exists that the Legislature intended to so restrict that authority. Of course, the expressio unius doctrine, like all rules of statutory construction, is merely an aid to determine legislative intent and does not constitute a rule of law. Resnick v. East Brunswick Bd. of Ed., 77 N.J. 88 (1978); Reilly v. Ozzard, 33 N.J. 529 (1961). Nonetheless, given the intent of the Legislature to vest the county executive with such a broad range of powers, application of the doctrine to the instant case seems particularly appropriate.
Prior to enactment of the Charter Law the board, pursuant to statute, determined the salaries of all county employees. N.J.S.A. 40A:9-10. It is upon this general law that the board bases its contention. In order to be applicable, however, the general law must not be inconsistent with the Charter Law. N.J.S.A. 40:41A-26(a). The Legislature is presumed to be thoroughly conversant with its own enactments. Brewer v. Porch, 53 N.J. 167, 174 (1969); Ayres v. Dauchert, 130 N.J. Super. 522, 528 (App.Div. 1974). Therefore, the fact that it enacted a statute specifying certain positions for which the board is to set salaries raises the inference that it considered N.J.S.A. 40A:9-10 to be inconsistent with the Charter Law. For these reasons, N.J.S.A. 40:41A-100(d) must be construed as a limitation upon the board's authority to determine salaries. The board's argument that the statute concerns only new positions is without merit. The board and the department head positions were all in existence prior to the Charter Law. In addition, this *95 construction does not require an implied repeal of N.J.S.A. 40A:9-10 since that section remains in effect in counties which have not adopted the Charter Law. Angelo v. Shapiro, 168 N.J. Super. 459, 465 (Law Div. 1979).

II
Under the County Executive form of government, both the board and the county executive constitute the "governing body" of the county. N.J.S.A. 40:41A-32(b). There is a distinct demarcation of authority between the two branches, however. The county executive is vested with responsibility for all administrative functions, while the board is the sole legislative body. Id. This division of labor resulted from the realization that the administrative burdens confronting freeholder boards seriously inhibited their ability to set priorities and formulate policies.[7] Therefore, the threshold question presented is whether the setting of salaries is an administrative or a legislative function.
In determining whether an act is administrative or legislative, several tests are generally employed. Matters of a permanent or general character are considered legislative, while acts which are temporary or routine are considered to be administrative. Cuprowski v. Jersey City, 101 N.J. Super. 15, 23 (Law Div. 1968). An act which states a rule of conduct or a course of policy is purely legislative in character. Acts performed by an executive to effectuate policies of the Legislature are considered administrative in nature. Id. See also Denman v. Quin, 116 S.W.2d 783, 786 (Tex.Civ.App. 1938); Keigley v. Bench, 97 Utah 69, 89 P.2d 480, 484 (Sup.Ct. 1939); Monahan v. Funk, 137 Or. 580, 3 P.2d 778, 779 (Sup.Ct. 1931); People v. City of Centralia, 1 Ill. App.2d 228, 117 N.E.2d 410 (Ct.App. 1953).
Research discloses that there is a split of authority regarding the issue of whether the power to set salaries is *96 legislative or administrative. In every case in which this issue has been presented, the court has been confronted with the question of whether a salary ordinance is the proper subject of a referendum, since it is uniformly held that referenda are not available to redress administrative acts. Cuprowski v. Jersey City, supra, 101 N.J. Super. at 23.[8] Although the majority of jurisdictions has adopted the position that the establishment of salary levels is a legislative function, these decisions have been based, in large part, upon the wording of the charter, statute, or ordinance involved. Furlong v. Nutley, 15 N.J. Super. 541, 546 (Law Div. 1951).[9]See, generally, Collins v. City & County of San Francisco, 112 Cal. App.2d 719, 247 P.2d 362 (D.Ct.App. 1952); Rives v. City of Paducah, 287 Ky. 709, 155 S.W.2d 33 (Ct.App. 1941); State ex rel. Mulvoy v. Miller, 315 Mo. 41, 285 S.W. 504 (Sup.Ct. 1926); State v. Eastcott, 53 S.D. 191, 220 N.W. 613 (Sup.Ct. 1928); Glass v. Smith, 150 Tex. 632, 244 S.W.2d 645 *97 (Sup.Ct. 1951); State ex rel. Payne v. City of Spokane, 17 Wash.2d 22, 134 P.2d 950 (Sup.Ct. 1943).
The better reasoned decisions hold that establishing salary levels is an administrative act, however. Shriver v. Bench, 6 Utah 2d 329, 313 P.2d 475, 481 (Sup.Ct. 1957); People ex rel. Holvey v. Kapp, 355 Ill. 596, 189 N.E. 920 (Sup.Ct. 1934); Murphy v. Gilman, 204 Iowa 58, 214 N.W. 679 (Sup.Ct. 1927); McElroy v. Hartsfield, 185 Ga. 264, 194 S.E. 737 (Sup.Ct. 1937). The fixing of salary schedules in a modern, urban county with its numerous departments and classes of employees is a responsibility which can best be performed by the centralized, professional administrative staff contemplated by the County Executive form of government. Further, the changes which continually occur make it highly desirable that there be some expeditious method of re-examining the situation at frequent intervals. Placing such responsibility in the board would surely impair its basic legislative role of establishing policy. The Charter Law did not contemplate separate "water-tight compartments".[10] Both the county executive and the board are required to cooperate in establishing salary levels for county personnel. In short, the Charter Law has created a system of checks and balances. Thus, the county executive prepares the budget, but it is necessary for the board to approve it. In approving the budget the board has a measure of control over the establishment of salary levels. In sum, the County Executive plan necessarily assumes that the legislative and administrative branches will coordinate to the end that government will fulfill its mission.
The position that the establishment of salary levels is an administrative act is also justified on the basis of practicality. A number of factors require frequent re-examination of salary levels. Salaries should be set by administrative personnel who are conversant with prevailing wage scales, the needs of the various departments, and the overall budget. Shriver v. Bench, *98 6 Utah 2d 329, 313 P.2d 475, 478 (Sup.Ct. 1957). The legislative history of the Charter Law reveals an intention to have salaries set by administrative employees.[11] Moreover, the position of county executive is intended to be akin to the Executive Branch at the State level.[12] With respect to State Government, the Legislature determines the salaries only for high-level officials. N.J.S.A. 52:14-15.107. The salaries of all other state employees are set by the Civil Service Department, an executive agency. N.J.S.A. 11:8-1 et seq.
Further support for the proposition that salary setting is an administrative function is found in the Administrative Code of Essex County which was enacted in accordance with the Charter Law. The Administrative Code states that a Division of Personnel is established under the county executive. Essex County Admin. Code § 9.1.8. The personnel director, an administrative official, is responsible for developing and administering the county's personnel program, "including up-to-date job classification and pay plans...." Id. at § 9.1.8(a). For these reasons I find that establishment of salaries, other than those listed in N.J.S.A. 40:41A-100(d), is an administrative function, and therefore, is within plaintiff's authority.

III
Finally, public policy considerations strongly favor the position advanced by the county executive. The question presented here must be considered within the context of the history of county government in New Jersey. Counties are the creation of the State. Bergen Cty. v. Port of N.Y. Auth., 32 N.J. 303, 312 (1960); State v. East Shores, Inc., 164 N.J. Super. *99 530 (App.Div. 1979). Historically, a county is solely a subdivision of the State constituted to administer its power and authority. Bergen Cty. v. Port of N.Y. Auth., supra, 32 N.J. at 312; Godfrey v. McGann, 37 N.J. 28, 34 (1962). Consequently, it is the State Legislature which is responsible for the establishment and structure of county government.
Enactment of the Charter Law was the direct result of a study undertaken by the Musto Commission. However, the genesis of the Charter Law did not originate with that Commission. Rather, the organization of county government was carefully reviewed during the proceedings of the Constitutional Convention of 1947.[13] At that time it was suggested that county government could be made more flexible if the voters were permitted to frame their own charters. Then, as now, a rich diversity existed in the various counties in New Jersey requiring that each county government reflect local needs.[14]
This approach was ultimately adopted by our Legislature when it enacted the Charter Law. The plain intent of the Legislature was to provide county governments with sweeping powers to restructure their forms as they saw fit, consistent with the State Constitution. American Fed'n of State, Cty. and Mun. Emps. v. Hudson Cty. Welfare Bd., supra, 141 N.J. Super. at 32. The lack of centralization of county government was cited by the Musto Commission as the primary cause of the difficulties faced by some counties.[15] This was particularly true *100 in heavily populated urban counties such as Essex. Most urban problems are no longer confined within recognized municipal boundaries. The need for a coordinated effort has become more pronounced. These complexities often demand cooperation among municipalities to cope with the realities of modern urban living. Under such circumstances, county government has become infinitely more important in solving urban problems. That is not to denigrate the important role of municipal government. It is to suggest, however, that the number and complexity of problems confronting county government have become greater with the passage of time.
Prior to the Charter Law, part-time freeholders were required to perform the administrative duties involved in running the departments for which they were responsible.[16] So, too, the board acted as the sole legislative body. This diffusion of responsibility in county government, particularly in urban areas, has historically been an impediment to its efficient operation. The entire thrust of the Charter Law was to remove that impediment by permitting the centralization of all phases of county government.[17] The County Executive plan vests the power to direct the operations of government in a single elected official, the county executive.[18] Administration of the policies established by the board must rise or fall with his performance. Given the purpose of the Charter Law, the authority of the county executive must be held to extend to the determination of the salaries of county employees.
For the reasons set forth herein, summary judgment is granted in favor of plaintiff.
NOTES
[1] N.J.S.A. 40:41A-100(d).
[2] Ordinance 00625.
[3] N.J.S.A. 40:41A-87.
[4] This contention is based, in part, upon the presumption of validity of legislative enactments. Ordinances, like statutes, are presumed to be valid. Guill v. Hoboken, 21 N.J. 574 (1956); Garden State Racing Ass'n v. Cherry Hill Tp., 42 N.J. 454 (1964); 1A Sutherland, Statutory Construction, § 30.05. However, where, as here, the Legislature offers the counties a choice of alternative forms of government, and a county adopts one of those forms, it must abide by the procedures set forth in the Charter Law. The presumption of validity will not save an ordinance which purports to deviate from the plan fashioned by the Legislature. An ordinance which attempts such a deviation would be ultra vires, and therefore invalid.
[5] N.J. County and Municipal Government Study Commissions, County Government: Challenge and Change, Second Report, April 28, 1969, at 108. (hereinafter, "Musto Report").
[6] Id. at 109.
[7] Id. at 59.
[8] An analogy can be drawn between the Charter Law and the Faulkner Act, N.J.S.A. 40:69A-1 et seq., upon which it is partially based. Although the Faulkner Act contains a provision authorizing referenda to challenge "any" municipal ordinance, N.J.S.A. 40:69A-184, this provision has been held to be inapplicable to salary ordinances. Lawrence v. Butcher, 130 N.J. Super. 209, 213 (App.Div. 1974); Stop the Pay Hikes Comm. v. Irvington, 166 N.J. Super. 197, 206 (Law Div. 1979); Lettieri v. Bayonne, 168 N.J. Super. 423, 427 (Law Div. 1979). Referenda concerning salary ordinances are governed by the referendum provisions of the general law, which make referenda available only to challenge the salaries established for high level officials. N.J.S.A. 40A:9-165 et seq. By excluding the salary levels of all but the highest officials from challenge by referendum, an inference is raised that the Legislature considered the establishment of these lower level salaries to be an administrative act. Absent an explicit statement of its intent to the contrary, it cannot be presumed that the Legislature intended to alter the rules it established for referenda on the municipal level with regard to the availability of referendum to challenge the salary levels of county employees.
[9] The referendum sought here was based upon N.J.S.A. 40:46-27, which authorized referenda on the salaries of any municipal employees. That statute was repealed by N.J.S.A. 40A:9-167, which authorizes referenda only on the salaries of members of the governing body, elected officials, managerial executives and confidential employees.
[10] Cf. Massett Building Co. v. Bennett, 4 N.J. 53, 57 (1950).
[11] The Musto Commission report states that, "the personnel problem is not a simple one of raising salaries, it involves an obvious need for a broad-gauged personnel program, something which can only be undertaken by a central administrative staff." Id. at 67.
[12] Id. at 109.
[13] 2 Proceedings of the New Jersey Constitutional Convention, Connor, "Home Rule," 1729.
[14] Id. at 1744.
[15] Musto Report at 36. Although the findings of the Musto Commission are not binding upon a court, they may be accorded some weight. American Fed'n of State, Cty. and Mun. Emps. v. Hudson Cty. Welfare Bd., supra at 32; 2A Sutherland, Statutory Construction, § 48.09.
[16] Musto Report at 58-59.
[17] Id. at 108-109; Union Cty. Park Comm'n. v. Union Cty., 154 N.J. Super. 213, 231 (Law Div.), aff'd 154 N.J. Super. 125 (App.Div. 1977).
[18] Musto Report at 109.