NEW JERSEY STATE POLICEMEN'S BENEVOLENT ASSOCI-
ATION OF NEW JERSEY, INC., A NEW JERSEY COR-
PORATION, PLAINTIFF-RESPONDENT, v. TOWN OF
MORRISTOWN, A MUNICIPAL CORPORATION, *ET AL.*,
DEFENDANTS-APPELLANTS.

Argued March 18, 1973—Decided June 6, 1974.

Mr. *John M. Newman* argued the cause for defendants-appellants, Town of Morristown, *et al.* (*Mr. Henry M. Hoyt,* attorney, and on the brief).

Mr. *Richard M. Conley,* Deputy Attorney General of New Jersey, argued the cause for defendant-appellant Mr. George F. Kugler, Jr., former Attorney General of New Jersey (*Mr. William F. Hyland,* Attorney General of New Jersey, attorney; *Mr. Morton I. Greenberg,* former Assistant Attorney General of New Jersey, on the brief).

Mr. *James R. Zazzali* argued the cause for plaintiff-respondent (*Mr. Anthony L. Mezzacca,* on the brief; *Messrs. Zazzali & Zazzali,* attorneys).

The opinion of the Court was delivered by

PASHMAN, J. The issue before the Court is purely a matter of law. The landmark legislation which we must interpret,

*N. J. S. A.* 9 :17B–1 *et seq.* (*L.* 1972, *c.* 81, effective January 1, 1973)[1], extends "to persons 18 years of age and older

[1]

9 :17B–1.  Legislative findings

The Legislature finds and declares and by this act intends, pending the revision and amendment of the many statutory provisions involved, to :

a.  Extend to persons 18 years of age and older the basic civil and contractual rights and obligations heretofore applicable only to persons 21 years of age or older, including the right to contract, sue, be sued and defend civil actions, apply for and be appointed to public employment, apply for and be granted a license or authority to engage in a business or profession subject to State regulation, serve on juries, marry, adopt children, attend and participate in horse race meetings and parimutuel betting and other legalized games and gaming, sell, purchase and consume alcoholic beverages act as an incorporator, registered agent or director of a corporation, consent to medical and surgical treatment, execute a will, and to inherit, purchase, mortgage or otherwise encumber and convey real and personal property.

b.  Abolish the right of a person between the ages of 18 and 21 years to disaffirm and be relieved of contractual obligations by reason of age.

9 :17B–2.  Laws unaffected by act

The Legislature by this act does not intend to :

a.  Effect the release from confinement or transfer from one institution to another of a person attaining age 18 rather than 21 years ;

b.  Affect the right of a court to exercise its discretion in not sentencing a person between 18 and 21 years of age to a State Prison.

c.  Alter the right of persons under 20 years of age to be eligible for enrollment in public schools ;

d.  Alter the provisions of the uniform law relative to gifts to minors ;

e.  Alter the provisions of N. J. S. 2A :14–21 with respect to the time within which a person under 21 years of age on January 1, 1973 may commence an action or make an entry under a cause or right accrued prior to said date.

f.  Alter the provision of services pursuant to the laws relating to dependent and neglected children, allocated to chapter 4C of Title 30 of the Revised Statutes (C. 30 :4C–1 to 30 :4C–44), to persons between 18 and 21 years of age who seek to avail themselves of such services and who are enrolled in a school or training program below college level or who require a course of treatment for emotionally, cognitively or physically disabled persons.

Plaintiff, New Jersey State Policemen's Benevolent Association of New Jersey, Inc. (P. B. A.), alleges that the enactment in lowering the age of majority from 21 to 18 years of age does not authorize the employment of policemen under 21 years of age, as prohibited by *N. J. S. A.* 40A:14–127.[2] Plaintiff sought injunctive and declaratory relief against the Town of Morristown; its Mayor and Chief of Police; George F. Kugler, Jr., then Attorney General of New Jersey; and John Murphy, a policeman betwen the ages of 18 and 21 years employed by Morristown. Defendants moved to dismiss on the ground that the complaint failed to state a claim upon which relief could be granted. The Chancery Division granted

9:17B–3. Minors, eighteen and older, deemed adult; exceptions

Except with respect to the provisions of N. J. S. 2A:14–21, with respect to the provision of services pursuant to the laws relating to dependent and neglected children, allocated to chapter 4C of Title 30 of the Revised Statutes (C. 30:4C–1 to 30:4C–44), to persons between 18 and 21 years of age who seek to avail themselves of such services and who are enrolled in a school of training program below college level or who require a course of treatment for emotionally, cognitively or physically disabled persons, with respect to the right of a court to take any action it deems appropriate and in the interest of a person under 21 years of age, or to require a change in action heretofore taken by a court with respect to a person under 21 years of age, or with respect to the provisions of the "New Jersey Uniform Gifts to Minors Act" (P. L. 1963, c. 177, C. 46:38–13 et seq.), every person 18 or more years of age shall in all other matters and for all other purposes be deemed to be an adult and, notwithstanding any other provision of law to the contrary, shall have the same legal capacity to act and the same powers and obligations as a person 21 or more years of age. Except as herein otherwise provided, every act or action of any such person shall be as valid, binding and enforceable by or against such person as if, at the time such act or action was performed or undertaken, such person was 21 or more years of age and no act or action by any such person performed or undertaken on or after the effective date of this act shall be subject to disaffirmance because of minority.

2

*N. J. S. A.* 40A:14–127. Age requirements.

Except as otherwise herein provided, no person shall be appointed as a member or officer of the police department or force in any municipality who is under 21 or over 35 years of age.

\* \* \*

judgment on the pleadings, holding the age requirement that policemen must be between 21 and 35 years of age as provided by *N. J. S. A.* 40A:14–127 was not affected by *N. J. S. A.* 9:17B–1 *et seq. N. J. State P. B. A. v. Morristown,* 124 *N. J. Super.* 389 (Ch. Div. 1973). In essence, the trial court held that "overriding considerations of public safety and welfare" and "distinctions in maturity and experience" indicate that the lower age limit of 21 years was not merely intended to reflect the legal age of majority, but rather was based on the particular requisites for employment as a policeman. A stay pending appeal was granted on July 3, 1973. On motion by the Attorney General while the appeal was pending unheard in the Appellate Division, certification was granted on November 12, 1973. 64 *N. J.* 326 (1974). We reverse.

█ The question is whether *N. J. S. A.* 9:17B–1 *et seq.* supersedes *N. J. S. A.* 40A:14–127 to the extent they may be inconsistent. The age of majority enactment lacks the requisite specificity to be classified as an express repeal. While it is not essential to identify a specific provision in order to effect its express repeal, it is necessary to describe the provision with reasonable certainty. In any event, acts are just as effectively repealed by implication as by specific designation. 1 *Sutherland, Statutory Construction* (3d ed.), §§ 2008, 2009.

██ Repeals by implication are not favored. In the absence of an express repealer, there must be a clear showing of legislative intent to effect a repeal. *Crater v. County of Somerset,* 123 *N. J. L.* 407, 414 (E. & A. 1939); *Henninger v. Board of Chosen Freeholders of County of Bergen,* 3 *N. J.* 68, 71 (1969); *Swede v. City of Clifton,* 22 *N. J.* 303, 317 (1956); *Department of Labor and Industry v. Cruz Construction Co.,* 45 *N. J.* 372, 380 (1965); *Brewer v. Porch,* 53 *N. J.* 167, 173 (1969); *Mahr v. State,* 12 *N. J. Super.* 253, 261 (Ch. Div. 1951). This doctrine, however, is merely an aid in ascertaining legislative intent. *State v. Hotel Bar Foods,* 18 *N. J.* 115, 129 (1955). The criteria for evaluating

whether or not a repeal has been effected are numerous. *Sutherland, supra,* § 2007. In the final analysis, a law cannot be evaluated in a vacuum, but must be considered in the context in which it was adopted. *Appeal of N. Y. State Realty & Terminal Co.,* 21 *N. J.* 90, 98 (1956); *Malawan Borough v. Monmouth County Tax Board,* 51 *N. J.* 291, 299 (1968).

██ The inquiry is, of course, one of establishing legislative intent as expressed in its language. *Gangemi v. Berry,* 25 *N. J.* 1, 10 (1957). See generally, *Sutherland, supra,* §§ 2006, 2007. In conducting this inquiry, it should be noted that new laws which radically change the old may be the basis of and may provide some indication of legislative intent. *Mahr v. State, supra,* 12 *N. J. Super.* at 261. A new law altering fundamental assumptions relied upon by the old law will work to supersede earlier inconsistent statutes. *Board of Education v. Tait,* 81 *N. J. Eq.* 161 (E. & A. 1913); *Two Guys from Harrison, Inc. v. Furman,* 32 *N. J.* 199, 223–225 (1960); *Mahr v. State, supra,* 12 *N. J. Super.* at 261–262.

In changing the age of majority in New Jersey, the Legislature was cognizant of extensive reference to that age in the statutes. The enactment is introduced by a specific statement of legislative intent to change the age "pending the revision and amendment of the *many statutory* provisions involved." (Emphasis added). *N. J. S. A.* 9:17B–1. Furthermore, in *N. J. S. A.* 9:17B–3, the Legislature took note of inconsistent laws by providing that "every person 18 or more years of age shall *in all other matters* and for *all other purposes* be deemed to be an adult and, *notwithstanding any other provision of law to the contrary,* shall have the same legal capacity to act . . . as a person 21 years of age." (Emphasis added). Of the numerous means of altering the age of majority, the Legislature has chosen in one enactment to eradicate 21 as the age of majority and substitute age 18 rather than initially attempt the massive task of ferreting out each and every statute which would require alteration.

██ █ The legislative intent in enacting *N. J. S. A.* 9: 17B–1 *et seq.* was to supersede inconsistent statutory requirements which were based on the age of majority as 21 years. The Legislature was well aware that its enactment would lower the age for employment as a policeman. The subject of police minimum age requirements was simultaneously being considered by the Legislature along with the current statute. *Assembly Bill No.* 450 (1972) provided for the reduction from minimum age 21 to 19 years of age for appointment to a local fire or police force. The bill passed the Assembly on May 11, 1972, but never was released from the Senate Committee on County and Municipal Government. A similar bill which applied only to policemen, *Assembly Bill No.* 120 (1972), was never reported out of the Assembly Committee on Law, Public Safety and Defense. The current statute was introduced on May 4, 1972 (*Senate Bill No.* 992) and was signed by the Governor on July 5, 1972.

It cannot be contended that the Legislature neglected to exclude policemen from the application of the act where specific exclusions were provided, none of which dealt with policemen, and the subject matter alleged to be excluded was being simultaneously considered. This is particularly so where the language of the act is specific in terms of a comprehensive change "pending revision and amendment" of the numerous provisions affected as to the new status of 18-year-olds "in all other matters and for all other purposes." *N. J. S. A.* 9 :17B–1 and 9 :17B–3. *Mahr v. State, supra,* 12 *N. J. Super.* at 263. The intent of the Legislature as expressed in the statute indicates the applicability of the axiom — *expressio unius est exclusio alterius. Gangemi v. Berry, supra,* 25 *N. J.* at 11; *Mahr v. State, supra,* 12 *N. J. Super.* at 263. The Legislature is familiar with its previous enactments and was aware of the statute's widespread applicability. *Eckert v. New Jersey State Highway Department,* 1 *N. J.* 474, 479 (1949); *Matawan Borough v. Monmouth County Tax Board, supra,* 51 *N. J.* at 299–300; *Brewer v. Porch, supra,* 53 *N. J.* at 174. That the Legislature chose

to deal with the change in age of majority with so broad a statute is not a policy with which this Court can disagree. A judicial expansion of the act to exempt *N. J. S. A.* 40A: 14–127 would constitute an unwarranted exercise of the legislative function. *Eckert v. New Jersey State Highway Department, supra,* 1 *N. J.* at 479–480.[3] As noted in a memorandum from the Assistant Attorney General to all department heads, dated October 13, 1972, additional exceptions will have to be accomplished by further legislation.[4]

Plaintiff argued that the requirements of *N. J. S. A.* 40A: 14–127 deal with concepts and purposes beyond the adult-minor distinction which is at the heart of *N. J. S. A.* 9: 17B–1 *et seq.* The contention is that the minimum age of 21 was only coincidentally equivalent to the age of majority and that the appointment of policemen was to be limited "to persons of a certain maturity and experience, and of certain mental, emotional and physical prowess." The law did not intend to obliterate every legal distinction between those 18 and 21 years of age. In support of this argument, plaintiff notes that the Legislature could have amended all references to age 21 to read age 18, and that while the minimum age has remained constant, the maximum age has varied. The fact that the Legislature has varied only the maximum age requirement does not necessarily indicate that the lower age limit was based on reasons beyond the fact that it was the age of majority. It would appear equally as reasonable to conclude that the constancy of the minimum age, in view of a varying concept as to the appropriate maximum, reinforces

---

[3]For a discussion and examples of how other jurisditcions have approached the same problem, see generally Council of State Governments, *The Age of Majority* (1972) and *Age of Majority* (Updated) 1973.

[4]The statute was amended prior to its taking effect on January 1, 1973. *L.* 1972, *c.* 206, §§ 1 and 2 preserved the rights of those between 18 and 21 pursuant to *N. J. S. A.* 30:4C–1 to 30:4C–44 with respect to dependent and neglected children. See *N. J. S. A.* 9:17B–2(f) and 9:17B–3.

the view that such minimum was based on the age of majority.

While it is accurate to contend that not every legal distinction between those age 21 and 18 has been obliterated, the exceptions intended were specifically provided in the statute. Exceptions were included in the act so as not to effect (1) release or transfer from institutions of one attaining the age of 18 rather than 21; (2) court sentencing discretion for those between 18 and 21; (3) eligibility for enrollment in public schools; (4) uniform law provisions for gifts to minors; (5) limitation of actions pursuant to *N. J. S. A.* 2A:14–21; and by subsequent amendment, (6) provision of services for dependent and neglected children pursuant to *N. J. S. A.* 30:4C–1 to 30:4C–44. *N. J. S. A.* 9:17B–2. These specific exceptions bear no relationship to and do not include the minimum eligible age for employment as a policeman. To the contrary, *N. J. S. A.* 9:17B–1 extends to persons 18 years of age and older the right to "apply for and be appointed to public employment."

The lower court relied on the Attorney General's "concession" that no statute exists outside the field of law enforcement governing the minimum age of public employment as sufficient to raise the inference that other criteria must then have been considered in providing for a minimum age of 21. *New Jersey State P. B. A. v. Morristown, supra,* 124 *N. J. Super.* at 391. The statutes of this State have required one to reach age 21 before being entitled to engage in a wide variety of occupations and professions.[5] In this

---

[5] An age requirement of 21 years is contained in numerous New Jersey statutes relating to various occupations and professions, including certification as a tree expert (*N. J. S. A.* 13:1–31), certification to collect birds, nests and eggs for scientific purposes (*N. J. S. A.* 23:4–52), certification or licensing as an accountant (*N. J. S. A.* 45:2A–8), architect (*N. J. S. A.* 45:3–5), chiropodist (*N. J. S. A.* 45:5–3, 45:5–.2), dentist (*N. J. S. A.* 45:6–3), embalmer and funeral director (*N. J. S. A.* 45:7–12, 45:7–13), doctor or surgeon (*N. J. S. A.* 45:9–6), physical therapist (*N. J. S. A.* 45:9–37.3), chiropractors (*N. J. S. A.* 45:9–41.1 to 49:9–41.5), bio-analytical lab-

context, law enforcement is not distinguishable from other means of public employment. Policemen are accorded the benefit of general laws with respect to employment. *Engel v. Township of Woodbridge*, 124 *N. J. Super.* 307, 310 (App. Div. 1973).

While very few cases exist dealing with the statute, those which have considered the question are consistent with this Court's opinion. See *Schumm v. Schumm*, 122 *N. J. Super.* 146 (Ch. Div. 1973); *Hull v. Weir*, 122 *N. J. Super.* 219 (Law Div. 1973); *In re Morgan*, 122 *N. J. Super.* 117 (P. Ct. 1973). Compare *State v. Stewart, et al.*, 120 *N. J. Super.* 509 (App. Div. 1972).

There is no magic to the age of 21. The 21-year age of maturity is derived only from historical accident.[6] It is not a mystical figure whose importance as the age of majority has captured every civilization. While many societies have had laws or conventions regulating the age at which young people were considered adults, those ages have varied. Military service has frequently been a determining factor. Historians of the Roman empire indicate that the barbarians considered 15 as the proper age of majority because young people then became eligible for military service. The ability

oratory director (*N. J. S. A.* 45:9–42.4), opthalmic dispenser (*N. J. S. A.* 52:17B–41.9), optometrist (*N. J. S. A.* 45:12–5), orthoptist (*N. J. S. A.* 45:12A–3), pharmacist (*N. J. S. A.* 45:14–7), psychologist (*N. J. S. A.* 45:14B–14), plumber (*N. J. S A* 45:14C–15), real estate broker or salesman (*N J. S. A.* 45:15–9), shorthand reporter (*N. J. S. A.* 45:15A–3, 45:15A–5), and veterinarian (*N. J. S. A.* 34:16–7). A notary public must also be 21 years of age (*N. J. S. A.* 52:7–1.1).

In addition, a minimum age requirement of 21 is contained in the New Jersey Statutes with respect to tax assessors (*N. J. S. A.* 54:1–35.25), motor vehicle officers (*N. J. S. A.* 39:2–6.1), firemen (*N. J. S. A.* 40A:14–12), certain militia officers (*N. J. S. A.* 38A:5–1(d)), as well as for State and local policemen (*N. J. S. A.* 53:1–9, 4A:14–127).

[6]*S. Rep. No.* 92–26, Mar. 8, 1971, 1971 *U. S. Code Cong. & Admin. News* at 931.

to bear arms and the age of majority were identical under Ripuarian tradition.[7]

The male child of an Athenian citizen reached majority at 18 and was qualified for membership in the assembly at age 20; however, age 30 was a requirement for service on a jury. In ancient Sparta, males did not reach majority until 31. In Rome, increased emphasis on education led to a correlation of understanding of the law to the age of majority, which was eventually set at 14. This prevailed in northern parts of Europe and in England during the ninth, tenth and eleventh centuries. The expanding role of the mounted knight after the Norman Conquest led to heavier mail shirts and coifs, as well as shields and armor. With the advent of knighthood, the age of majority rose to 21; for at that time, young men were first capable of meeting its physical and mental demands. This age, however, did not initially apply to agricultural tenants, where one's ability to complete husbandry and farming chores was paramount. Such commoners reached majority at age 15, although 21 later became the age of majority for all classes.[8]

From this point on, the age of 21 seemed gradually to be accepted, even though the specific reasons for its appearance had long since passed. The province of Massachusetts Bay, in 1641, established 21 as the age for giving votes, verdicts or sentences.[9] That "the historical causes for 21 [as the age of majority] are not relevant to contemporary society" was a conclusion of the Latey Report, *supra* at 125. The Report

---

[7]*Report of the Committee on the Age of Majority* (Latey Report), Her Majesty's Stationery Office, Cmnd. 3342, July 1967, pp. 20–22; *Report to the Honorable William G. Milliken, Governor of Michigan, from the Governor's Special Commission on the Age of Majority,* 1971, pp. 3–4; *The Report of the Governor's Commission on the Age of Majority,* State of *Connecticut,* 1971, pp. 4–5; *The Age of Majority, supra* at 3.

[8]See n. 7, *supra.*

[9]Massachusetts, *Report of the Legislative Research Council Relative to Lowering the Age of Majority,* January 20, 1971, pp. 8, 17–26.

further concluded that *"most young people today mature earlier than in the past"* and that *"by 18 most young people are ready for these responsibilities and rights and would greatly profit by them as would . . . the community as a whole . . . ."* (Emphasis added). *Latey Report, supra* at 125.

In commenting on this State's approval of the twenty-sixth amendment, extending the voting franchise to 18-year-olds, Justice Jacobs noted the infusion of youthful enthusiasm into our institutions and referred to the enactment currently at issue.

> \* \* \* The goal [of the twenty-sixth amendment] was not merely to empower voting by our youths but was affirmatively to encourage their voting, through the elimination of unnecessary burdens and barriers, so that their vigor and idealism could be brought within rather than remain outside lawfully constituted institutions. They were emancipated in fact by the new mobilities and freedoms and they were emancipated in law when the Legislature recently enacted that, effective January 1, 1973, they shall have "the basic civil and contractual rights and obligations heretofore applicable only to persons 21 years of age or older." \* \* \*
>
> *Worden v. Mercer County Board of Elections*, 61 *N. J.* 325, 345–346 (1972).

The Legislature has indicated by the passage of *N. J. S. A.* 9 :17B–1 *et seq.* that police forces are included within those who are to benefit from the "vigor and idealism" of our youth. They have demonstrated their enthusiasm, their open-mindedness and their refreshing viewpoints. This will bring them further into the political process. The gap between the "Nation's ideals and actions" will narrow. They will have a further "responsible stake in the future of the Nation."[10] To deny that which is deserved is to spawn frustration and rebellion.

The judgment of the Chancery Division is reversed.

*For reversal*—Chief Justice HUGHES, and Justices JACOBS, HALL, SULLIVAN, PASHMAN and CLIFFORD—6.

*For affirmance*—None.

---

[10]See Note 4, *Seton Hall L. Rev.* 329 (1972).