DEPARTMENT OF CIVIL RIGHTS *ex rel* JOHN SMILNAK v CITY
OF WARREN

Docket No. 71783. Submitted April 11, 1984, at Detroit.—Decided
July 9, 1984. Leave to appeal applied for.

Claimant, John Smilnak, a 19-year-old resident of the City of
Warren, filed a complaint with the Michigan Department of
Civil Rights alleging that the respondents, City of Warren and
City of Warren Act 78 Police and Fire Civil Service Commis-
sion, had unlawfully discriminated against him on account of
his age in refusing to accept claimant's application for the
position of firefighter. Respondents had relied upon § 10 of 1935
PA 78 which provides that such applications will not be re-
ceived if the applicant is less than 21 years of age. The
Michigan Department of Civil Rights issued a charge against
the respondents in response to the complaint of Smilnak. A
hearing referee found respondents to be in violation of the Age
of Majority Act. A commissioner thereafter adopted the refer-
ee's report and recommendations. The Civil Rights Commission
thereafter issued an opinion and order finding respondents to
be in violation of the Elliott-Larsen Civil Rights Act and
ordering respondents to hire Smilnak and give him back pay.
Respondents appealed to the Macomb Circuit Court which
reversed the opinion and order of the Civil Rights Commission,
Frank E. Jeannette, J. The Michigan Department of Civil
Rights *ex rel* John Smilnak appeals. *Held:*

1. The Legislature, in enacting 1935 PA 78, intended, at the
time of its enactment, to codify and make uniform the employ-
ment of all fire and police officers under centralized civil
service boards subject to statutorily set minimum qualifications.
Section 10 of 1935 PA 78 set 21 years of age as one of those
minimum statutory qualifications.

2. The clear purpose of 1971 PA 79, the Age of Majority Act,

REFERENCES FOR POINTS IN HEADNOTES
[1, 3-7] 15A Am Jur 2d, Civil Service § 12.
[1, 4-6] 42 Am Jur 2d, Infants §§ 3, 4.
[2-4, 7] 73 Am Jur 2d, Statutes §§ 145, 146, 204.
[5, 6] 73 Am Jur 2d, Statutes § 189.
[7] 73 Am Jur 2d, Statutes § 281.

was to establish 18 as the age at which a minor loses the disabilities and protections of his minority and gains the legal status of an adult. It dealt with the legal capacity of adulthood and not with the question of minimum age qualifications for employment as a fireman or policeman. It did not intend to confer the right to apply for a fireman's job notwithstanding the statutory age requirements of that job.

3. 1935 PA 78 and 1971 PA 79 are not *in pari materia* because their aims are different. The age qualification of 1935 PA 78 does not impugn the status of 18-year-olds as adults. Rather, it impugns the status of all unqualified adults seeking to become policemen or firemen.

4. Minimum age qualifications for firemen and policemen have been found to be lawful.

5. The intent of 1935 PA 78 was to set the age of 21 as a minimum age for the purpose of insuring the mature and experienced police and fire services essential to the public welfare. The aim of the age requirement, to obtain qualified fire and police personnel, goes far beyond considerations of mere legal capacity.

6. The 21-year-old minimum age requirement of 1935 PA 78 is not superseded by the operation of 1971 PA 79.

Affirmed.

1. CIVIL SERVICE — POLICEMEN — FIREMEN — MINIMUM AGE — AGE OF MAJORITY ACT.

The 21-year-old minimum age requirement contained in the firemen and policemen civil service act is not superseded by the operation of the Age of Majority Act (MCL 38.510[3], 722.51 *et seq.;* MSA 5.3360[3], 25.244[51] *et seq.).*

2. STATUTES — JUDICIAL CONSTRUCTION.

The primary, fundamental and cardinal rule, purpose and object in the interpretation and construction of a statute is to ascertain and give effect to the intention of the lawmaking body, without violating the plain wording of the act; the intent sought to be determined is that of the particular legislature which passed it, and this intent is determined as of the time of passage of the statute rather than as of the time of any amendments.

3. CIVIL SERVICE — POLICEMEN — FIREMEN — MINIMUM AGE.

The Legislature intended at the time of enactment of the firemen and policemen civil service act to codify and make uniform the employment of all fire and police officers under centralized civil service boards subject to statutorily set minimum qualifications;

the act set 21 years of age as one of those minimum statutory qualifications (MCL 38.501 *et seq.;* MSA 5.3351 *et seq.).*

4. Age of Majority Act — Legal Capacity — Employment — Minimum Age.

   The clear purpose of the Age of Majority Act was to establish 18 as the age at which a minor loses the disabilities and protections of his minority and gains the legal status of an adult; the act dealt with the legal capacity of adulthood and not with the question of minimum age qualifications for employment as a fireman or policeman; the act did not intend to confer the right to apply for a fireman's job notwithstanding the statutory 21-year-old minimum age requirement of that job (MCL 38.510[3], 722.51 *et seq.;* MSA 5.3360[3], 25.244[51] *et seq.).*

5. Statutes — Civil Service — Firemen — Policemen — Age of Majority Act.

   The firemen and policemen civil service act and the Age of Majority Act are not *in pari materia* because their aims are different (MCL 38.501 *et seq.,* 722.51 *et seq.;* MSA 5.3351 *et seq.,* 25.244[51] *et seq.).*

6. Civil Service — Firemen — Policemen — Minimum Age — Age of Majority Act.

   The 21-year-old minimum age requirement for employment contained in the firemen and policemen civil service act does not conflict with the Age of Majority Act because it does not impugn the status of 18-year-olds as adults, but, rather, impugns the status of all unqualified adults seeking to become firemen and policemen (MCL 38.510[3], 722.51 *et seq.;* MSA 5.3360[3], 25.244[51] *et seq.).*

7. Civil Service — Firemen — Policemen — Minimum Age.

   The Legislature intended to set the age of 21 as the minimum age of employment for policemen and firemen for the purpose of insuring the mature and experienced police and fire services essential to the public welfare (MCL 38.510[3]; MSA 5.3360[3]).

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *Felix E. League* and *Howard E. Goldberg,* Assistants Attorney General, for petitioner.

*David L. Dalenberg,* Assistant City Attorney, for respondents.

Before: Hood, P.J., and M. J. Kelly and R. C. Livo,* JJ.

R. C. Livo, J. On September 9, 1980, claimant John Smilnak, a 19-year-old resident of the respondent City of Warren, attempted to file an application for the position of firefighter with respondent City of Warren Act 78 Police and Fire Civil Service Commission. Respondent commission refused to accept claimant's application, relying on § 10 of 1935 PA 78 (MCL 38.510; MSA 5.3360) which provides that applications will not be received if the person applying is less than 21 years of age. Claimant filed a verified complaint with the Michigan Department of Civil Rights on September 10, 1980, alleging that respondents had unlawfully discriminated against him on account of his age.

The Michigan Department of Civil Rights, in response to the complaint of John Smilnak, issued a charge against respondents-appellees. Following a hearing, a referee found respondents to be in violation of the Age of Majority Act, MCL 722.51 et seq.; MSA 25.244(51) et seq., and recommended that Smilnak be reimbursed for wages and benefits lost by virtue of the discrimination. The referee's report and recommendations were adopted by Commissioner Beverly Clark and, on July 27, 1982, the Civil Rights Commission issued its opinion and order finding respondents to be in violation of the Elliott-Larsen Civil Rights Act, MCL 37.2101 et seq.; MSA 3.548(101) et seq., and ordering that respondents hire Smilnak and give him back pay. On appeal to the Macomb County Circuit Court, Judge Frank E. Jeannette reversed the opinion and order of the Civil Rights Commission. From the order of reversal of May 27, 1983, the Department of Civil Rights appeals as of right.

* Circuit judge, sitting on the Court of Appeals by assignment.

1971 PA 79, the Age of Majority Act, MCL 722.51 *et seq.;* MSA 25.244(51) *et seq.,* is titled "(a)n act to define the age of majority or legal age and to prescribe and define the duties, liabilities, responsibilities, rights and legal capacity of persons 18 or more years of age". Section 2 provides:

"Notwithstanding any other provision of law to the contrary, a person who is 18 years of age but less than 21 years of age when this act takes effect, and a person who attains 18 years of age thereafter, is deemed to be an adult of legal age for all purposes whatsoever and shall have the same duties, liabilities, responsibilities, rights and legal capacity as persons heretofore acquired at 21 years of age." MCL 722.52; MSA 25.244(52).

Section 3 states in part:

"This act supersedes all provisions of law prescribing duties, liabilities, responsibilities, rights and legal capacity of persons 18 years of age through 20 years of age different from persons 21 years of age, including but not limited to the following enumerated public acts: [20 enumerated acts listed thereafter, not including 1935 PA 78]." MCL 722.53; MSA 25.244(53).

Section 10(3) of 1935 PA 78, the firemen and policemen civil service act, MCL 38.501 *et seq.;* MSA 5.3351 *et seq.,* as amended, provides in part:

"(3) Applicants for a position in the fire or police department shall undergo a physical examination which shall be conducted under the supervision of a commission composed of 2 doctors of medicine appointed for the commission by the mayor or principal executive officer of the city, village, or municipality. The commission shall certify that an applicant is free from bodily or mental defects, deformity or diseases

that might incapacitate the applicant from the performance of the duties of the position desired before the applicant shall be permitted to take further examinations. Applications will not be received if the person applying is less than 21 years of age or more than 31 years of age at the date of the application. However, if an applicant has formerly served upon the fire or police department of the city, village, or municipality to which application is made and has resigned from the department at a time when there were no charges of misconduct or other misfeasance pending against the applicant, within a period of 2 years next preceding the date of the application, and is a resident of the city, village, or municipality or the area authorized by city charter, then the applicant shall be eligible for reinstatement at the discretion of a civil service commission, even though the applicant shall be over the age of 31. The applicant, providing the former term of service justifies, may be reappointed to the fire or police department without examination other than a physical examination. If an applicant is reinstated to the fire or police department, the applicant shall be the lowest in rank in the department next above the probationers of the department." MCL 38.510; MSA 5.3360.

1977 PA 12 clarified that section and modified its language by deleting gender-specific terms (*i.e.,* he, him, his). 1982 PA 419 deleted the phrase "for a period of more than five years," which preceded "and has resigned" in the fourth sentence.

The question presented in this case is whether the 21-year minimum age requirement of § 10(3), which is not one of the specifically enumerated statutes in the Age of Majority Act, is superseded by the operation of the latter act. This is a question of first impression for this Court, although the Attorney General has considered it, OAG, 1979-1980, No 5646, p 591 (February 6, 1980), and the New Jersey courts have considered a similar question, *New Jersey State Policemen's Benevolent*

*Ass'n of New Jersey, Inc v Town of Morristown,* 65 NJ 160; 320 A2d 465 (1974).

This opinion will discuss the New Jersey case because of the reliance placed on it by the circuit court judge. New Jersey Statutes Annotated (NJSA) 9:17B-1 provides in part:

"The Legislature finds and declares and by this act intends, pending the revision and amendment of the many statutory provisions involved, to:

"a. Extend to persons 18 years of age and older the basic civil and contractual rights and obligations heretofore applicable only to persons 21 years of age or older, including the right to contract, sue, be sued and defend civil actions, apply for and be appointed to public employment, * * *."

NJSA 9:17B-2, 3 then set forth certain exceptions for which "21 years of age" remained the standard. Simultaneously with the age of majority act, the New Jersey legislature was considering separate bills to lower the age for employment of policemen and firemen. The separate bills were never enacted, nor was an exception made in the age of majority act for firemen and policemen. Consequently, the New Jersey Supreme Court held that the minimum age for employment of policemen and firemen was lowered from 21 to 18 years of age by operation of the age of majority act.

It is quite clear that a much different situation is presented in this case, where the Michigan Legislature has not compiled an exhaustive list of exceptions. Rather, § 3 of the Michigan act sets forth a non-exhaustive list of *included* acts. Therefore, while profitable for its discussion of principles of statutory construction and of the public policy aspects of age of majority legislation, the opinion in the New Jersey case is not particularly helpful

in interpreting the Michigan statute. The following conclusions contained in the circuit court's opinion, drawn from the New Jersey case, are thus suspect, given the great difference between the two statutes:

"Accordingly, the conspicuous absence of such language from Michigan's Age of Majority Act of 1971 can equally be interpreted to mean that while the Legislature sought to convey new rights to persons between the ages of 18 and 20, the right to public employment was not one of them. The Michigan Legislature could have easily included § 10(c) of Act 78 in the enumerated portion of § 3 of the Age of Majority Act of 1971. The act could also have made specific reference to public employment in § 2, but it did not."

The circuit court judge disposed of the opinion of the Attorney General agreeing with the position taken by the department on two grounds—that the Attorney General erred by concluding that the acts were *in pari materia* and that the Age of Majority Act was the latest expression of legislative intent. As noted *supra,* § 10(3) has been amended twice since the enactment of 1971 PA 79, but neither amendment affected the minimum age requirement. The Civil Rights Commission, on the other hand, disposed of the 1977 amendment, stating that:

"(T)he Age of Majority Act, by its very specific language, was intended to supersede any statute which prescribes the rights, duties, liabilities or responsibilities of persons 18 years of age through 20 years of age. Couched in this language, it was not incumbent upon the Legislature to bring Act 78 into conformity with the Age of Majority Act. To the contrary, only if the Legislature intended to exempt Act 78 from coverage under the Age of Majority Act would an amendment have been necessary."

In determining legislative intent, we are guided by the following principles:

"The primary, fundamental and cardinal rule, purpose and object in the interpretation and construction of statutes is to ascertain and give effect to the intention of the lawmaking body, without violating the plain wording of the act, and all other rules serve only as guides to assist in determining the intent with a greater degree of certainty.

"The intent to be sought for in a statute is that of the particular legislature which passed it, and this intent is determined as of the time of passage of statute rather than as of the time of any amendments. In this regard, the legislative history may be considered, as well as the opinion of the legislature regarding the interpretation of the statute." 22 Callaghan's Michigan Civil Jurisprudence, Statutes, § 108, p 379. (Footnote omitted.)

1935 PA 78, which became effective May 24, 1935, recited that it was:

"An act to establish and provide a board of civil service commissioners in cities * * * having full paid members in the fire department; to provide a civil service system based upon * * * fitness for * * * employment * * * of all officers and men appointed in said fire departments and respective cities * * *."

This Court may take judicial notice that in 1935, hundreds of cities existed in the State of Michigan. Thus, it seems obvious that the Legislature, in enacting 1935 PA 78, intended, at the time of its enactment, to codify and make uniform the employment of all fire and police officers under centralized civil service boards subject to statutorily set minimum qualifications. Section 10 of 1935 PA 78 set 21 years of age as one of those minimum statutory qualifications.

1971 PA 79, which became effective January 1, 1972, recited that it was:

"An act to define the age of majority or legal age and to prescribe and define the duties, liabilities, responsibilities, rights and legal capacity of persons 18 or more years of age."

In the substance of the enactment, the Legislature said:

"Notwithstanding any other provision of law to the contrary, a person who is 18 years of age but less than 21 years of age when this act takes effect, and a person who attains 18 years of age thereafter, is deemed to be an adult of legal age for all purposes whatsoever and shall have the same duties, liabilities, responsibilities, rights and legal capacity as persons heretofore acquired at 21 years of age." MCL 722.52; MSA 25.244(52).

And it further said:

"This act supersedes all provisions of law prescribing duties, liabilities, responsibilities, rights and legal capacity of persons 18 years of age through 20 years of age different from persons 21 years of age, including but not limited to the following enumerated public acts: [20 enumerated acts listed thereafter, not including 1935 PA 78]." MCL 722.53; MSA 25.244(53).

Having examined the statute, this Court must agree with respondents-appellees that the clear purpose of 1971 PA 79 was to establish 18 as the age at which a minor loses the disabilities and protections of his minority and gains the legal status of an adult. It dealt with the legal capacity of adulthood and not with the question of minimum age qualifications for employment as a fireman or policeman. It mandated that every 18-year-

old have *"the same * * * rights* and legal capacity as persons * * * 21 years of age". MCL 722.52; MSA 25.244(52). (Emphasis added.) It did not intend to confer the right to apply for a fireman's job notwithstanding the statutory age requirements of that job. Every 18-year-old has the "same rights" to apply to be a fireman upon reaching the required age of 21—and that is the same right acquired by every 21-year-old through the passage of 21 years of time.

The two statutes discussed above, 1935 PA 78 and 1971 PA 79, are not *in pari materia* because their aims are different. As the Supreme Court stated in *Palmer v State Land Office Board,* 304 Mich 628, 636; 8 NW2d 664 (1943):

"Statutes *in pari materia* are those which relate to the same person or thing, or to the same class of persons or things, or which have a common purpose; and although an act may incidentally refer to the same subject as another act, it is not *in pari materia* if its scope and aim are distinct and unconnected."

The age qualification of 1935 PA 78 does not conflict with 1971 PA 79 because it does not impugn the status of 18-year-olds as adults. Rather, it impugns the status of all unqualified adults seeking to become firemen or policemen. Such minimum age qualifications for firemen and policemen have been found to be lawful. *Ypsilanti v Civil Rights Comm,* 55 Mich App 103; 221 NW2d 923 (1974), *rev'd in part on other grounds* 393 Mich 254; 224 NW2d 281 (1974). The Legislature must be deemed to have known of this lawful age requirement, as it amended 1935 PA 78 twice after the *Ypsilanti* case was decided without amending the minimum age requirement set forth in § 10(3). See 1977 PA 12 and 1982 PA 419. Five prior

amendments (1943 PA 173; 1949 PA 271; 1956 PA 162; 1957 PA 94; 1966 PA 96) also provide a rational basis to infer that the Legislature would have altered the 21-year age requirement it enacted in 1935 if it had wished to do so.

It might be assumed that in 1935, the minimum age requirement of 21 years was adopted because it was then the age of majority. 1971 PA 79 would therefore presumptively apply. Section 10 of 1935 PA 78 shows, however, a preoccupation with age as a qualification for service that is lacking from the superseded laws recited in § 3 of 1971 PA 79; *e.g.*, MCL 55.107; MSA 5.1041 (notaries public) and MCL 257.305; MSA 9.2005 (school bus drivers). Our conclusion is that the aim of the age requirement in § 10 was to obtain qualified fire and police personnel and that such aim went far beyond considerations of mere legal capacity. This conclusion is practically impelled by the Legislature's inclusion of a (generally applicable) *maximum* age requirement (31) in § 10(3).

Assuming *arguendo* that the two statutes are *in pari materia,* both should be given effect if it can be done without repugnancy, absurdity or unreasonableness. *Rochester Community Schools Bd of Ed v State Bd of Ed,* 104 Mich App 569, 578-579; 305 NW2d 541 (1981). The Age of Majority Act was not intended to preclude the Legislature from making distinctions based on the age of 21. The Legislature has since done so with the drinking age. See MCL 436.33; MSA 18.1004 and MCL 436.33b; MSA 18.1004(2). Where valid policy reasons for requiring police and firemen to be 21 have been lawfully found by the Legislature to exist, it would be unreasonable to infer that it intended to disregard such reasons. We hold that its intent was to set the age of 21 as a minimum for the

purpose of insuring the mature and experienced police and fire services essential to the public welfare.

The circuit court's order reversing the Civil Rights Commission is affirmed.