**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3546-21

TOWNE CENTER AT HADDON
URBAN RENEWAL, LLC,

    Plaintiff-Appellant,

v.

PLANNING/ZONING BOARD
OF THE TOWNSHIP OF
HADDON, DEM RESTAURANT,
LLC, and LEE PALO, only in his
capacity as the Zoning Officer of the
TOWNSHIP OF HADDON,

    Defendants-Respondents.

_____

Argued September 20, 2023 – Decided February 15, 2024

Before Judges Accurso, Gummer and Walcott-Henderson.

On appeal from the Superior Court of New Jersey, Law Division, Camden County, Docket No. L-4226-20.

Jeffrey M. Brennan argued the cause for appellant (Baron & Brennan, PA, attorneys;

Jeffrey M. Brennan and Jeffrey I. Baron, on the briefs).

Marylou Garty argued the cause for respondents Haddon Township Planning Board and Lee Palo, in his capacity as Zoning Officer for the Township of Haddon (Garty Law Firm, LLC, attorneys; Marylou Garty, on the brief).

Matthew Paul Madden argued the cause for respondent DEM Restaurant, LLC (Madden & Madden, PA, attorneys; Matthew Paul Madden, on the brief).

PER CURIAM

In this matter, we address plaintiff-objector Towne Center at Haddon Urban Renewal, LLC's[1] appeal from a June 16, 2022 order dismissing its complaint in lieu of prerogative writs challenging approvals granted by defendant Planning/Zoning Board of the Township of Haddon to DEM Restaurant, LLC authorizing the development of a bar and restaurant. The Board's approval allows DEM to contract for use of a parking lot—not appurtenant to its business—to fulfill its parking space requirement. The narrow issue before us is whether Haddon Township, N.J., Ordinance § 142-39(5) (Nov.

---

[1] The record indicates plaintiff-objector is also referred to as Fieldstone and Olivo Dermatology Center.

23, 1999) (amended August 22, 2017),[2] which permits use of off-lot parking, requires the lending property to file an additional application for a use variance or undergo site plan review. Because we conclude there is no such requirement in the law, we affirm the court's decision to uphold Board approval.

DEM intends to open a restaurant in the Downtown Commercial zoning district in Haddon Township at 206 Haddon Avenue. Given the lack of on-site parking, DEM entered into a five-year licensing agreement to share the parking lot of an adjacent office building located at 212 Haddon Avenue, thereby partially fulfilling the parking requirement for its restaurant.

DEM sought to secure site plan approval for the renovation of the existing building at 206 Haddon and bulk variances for increasing the fence height for a proposed fence enclosing the outdoor entertainment area and reducing its parking obligation. After having taken testimony over four hearings, the Board issued a resolution granting DEM's application.

Towne Center, which participated in each hearing, filed a complaint in lieu of prerogative writs challenging the Board's approval of DEM's plan. The court entered a limited remand by consent, instructing the Board to determine if

---

[2] The ordinance provides in pertinent part: "[r]equired off-street parking and loading spaces shall be provided on the same lot or on any lot within 300 feet."

DEM established a "legal right to the use of the parking lot"; the effect of the August 24, 2021 adoption of section 142-39(A)(7)(q) relaxing the seat-to-parking-space ratio; and an interpretation of the Ordinance "regarding the necessity for the applicant to obtain use variance approval."

Following an additional hearing, the Board determined the licensing agreement sufficiently established DEM's legal entitlement to use the parking spots; the property met the requirements for a (c)(2) bulk variance, N.J.S.A. 40:55D-70(c)(2); and that a use variance was not required for the shared parking DEM had arranged to partially satisfy its parking obligation.

In the hearing after remand, the court rejected Towne Center's argument that because the parking for the restaurant proposed at 206 Haddon is not located on the same lot, a separate variance application is required for 212 Haddon, specifically finding:

> The parking lot at 212 Haddon Avenue is [an] existing use at that property which has an accessory use to the office building located on the property. The municipal land use law specifically permits use of such an existing adjacent parking lot in order to satisfy the parking requirements of the applicant DEM. No party seeks to make any modifications to the parking lot at 212 Haddon Avenue.

The judge found the Township's subsequent adoption of section 142-39(A)(5), specifically permitting parking on a lot within 300 feet, controlled

A-3546-21

over section 142-10, defining accessory use as "customarily incidental and subordinate to the principal use of the land or building and located on the same lot with such principal use," and that the Board was not required to entertain any additional hearings. The court dismissed Towne Center's complaint and affirmed the approval.

For the reasons that follow, we affirm.

I.

A.

In October 2019, DEM submitted an application to the Board to develop the property located at 206 Haddon as a bar and restaurant known as "Reunion Hall." The property is located in Haddon's Commercial C-1 district. According to the application and supplemental information, DEM "propose[d] the renovation of the existing structure to contain a bar [and] restaurant . . . that will contain a total of [250] seats which include both interior seating and the seating for the proposed seasonal outdoor seating area," and would require ten employees. In December 2019, DEM submitted an amended application reducing the total number of seats to 195.

At the time of this amended application, section 142-39(A)(7)(q) of the Haddon Ordinance required one parking space for every three seats and an

5

additional space for every two employees at peak hours, necessitating seventy parking spaces. The original site plan also had provided for four off-street parking spaces behind the building, but the amended plan omitted them because the width between the property line and the building led to "substandard driveway aisle dimension." Having no on-site parking, DEM sought bulk variance relief pursuant to N.J.S.A. 40:55D-70(c)(2), from the minimum number of on-site parking spaces required. At this juncture, DEM was specifically seeking thirty-five street spaces, having secured thirty-five spaces pursuant to its license agreement with the owner of 212 Haddon.

According to the agreement, the owner of 212 Haddon "grant[ed] to [DEM] a license to use the spaces for parking of vehicles by the employees [or] patrons of [DEM] . . . at a monthly charge of $1,500, payable in advance, for an initial term of [five] years beginning [in February 2019]." 212 Haddon is adjacent to the proposed Reunion Hall site and is similarly zoned for commercial use.

As to the remaining thirty-five parking spaces, DEM's traffic engineer indicated in his report and later in testimony that his parking accumulation counts for on-street parking on Haddon Avenue and along Glenwood Avenue would support Reunion Hall's remaining parking requirements. Specifically, he

6

concluded that in a 300-foot radius around 206 Haddon, on an exemplar Saturday evening and a weekday during lunch, there were a minimum of thirty-three available parking spaces and a maximum of forty-eight.

B.

During the hearing, counsel for Towne Center cross-examined DEM's owner, questioning how Reunion Hall would meet its parking obligations if the five-year shared parking agreement was not renewed in the future. Towne Center offered three witnesses: its principal, a traffic expert, and a professional planner. Towne Center's traffic expert testified that the parking variation manual issued by the Institute of Transportation Engineers offered a parking requirement, based on national statistics, that exceeded the Ordinance's requirement. He conceded the standards did not supplant the Ordinance or consider the particular character of the area with a number of dine-in restaurants next to a PATCO train station and bus line. And, although not part of his report, the expert performed his own parking count and suggested the available parking on Glenwood Avenue varied widely from DEM's traffic engineer's report. He also voiced concerns over the five-year shared parking agreement; both that the proposed hours of operation of Reunion Hall began before the weekday time allotment of the lease—meaning that the restaurant would be operational on

7

weekdays after 11:00 a.m. with no access to the thirty-five parking spots from the lease until 6:00 p.m.—and that the lease period was limited to a five-year term, rather than in perpetuity.

Towne Center also contended that the Board was unable to allot "on-street parking to satisfy on-site required parking" without an "overriding [o]rdinance giving [the Board] that authority" and reiterated that the five-year lease included no provisions for extension or termination and was unassignable. DEM countered that the governing body had allowed on-street and public parking to be counted as part of a parking allotment and a variance from that allotment was within the power of the Board to grant. Ultimately, the Board tabled the application to allow defendant to explore alternative parking arrangements and a possible seating reduction.

Thereafter, DEM submitted an amended application that reduced the seating for patrons by ninety-nine (from the original 250 to 151) and increased the number of employees to sixteen, thereby reducing its parking allotment to fifty-nine spaces under section 142-39 A(7)(q). When the Board reconvened, it heard testimony from DEM's traffic engineer, architect, and planner. The planner, following up on Towne Center's earlier arguments regarding the scope of the Board's authority, cited section 142-37(F)(2)(a), which permits the Board

to count "off-street, on-street, or public parking" as part of the parking allotment. The planner further averred that the allotment was modified by section 142-39(A)(5) in the 2017 adoption of Ordinance 2107-1372, to allow the counting of parking spaces within a 300-foot perimeter.

On cross-examination of DEM's planner, Towne Center suggested the shared-parking license made an end-run around accessory use, defined under the Ordinance as "[t]he use of land or of a building or portion thereof customarily incidental and subordinate to the principal use of the land or building and located on the same lot with such principal use." Towne Center contended that under the shared parking agreement, the parking lot at 212 Haddon must be considered an accessory use to 206 Haddon, while the Ordinance allows only an accessory use located on the same lot.

The Board rejected Towne Center's interpretation of the Ordinance and approved the bulk variance application by voice vote, seven to one, with the condition that the applicant inform the Board in the event the shared parking agreement is terminated and to eliminate the patron seating attributed to the shared parking agreement until replacement parking was obtained. A memorializing resolution followed.

A-3546-21

Towne Center filed a complaint in lieu of prerogative writs challenging the Board's approval. Following an amended complaint and answer, the court entered a limited remand by consent, instructing the Board to determine if DEM had established a "legal right to the use of the parking lot"; the effect of the August 24, 2021 adoption of section 142-39(A)(7)(q) relaxing the seat-to-parking-space ratio and whether the Ordinance required DEM to obtain use variance approval.

When the Board reconvened on remand, DEM's counsel advised that DEM's sole owner, David Welsh, had purchased 212 Haddon and its accompanying parking lot through a separate entity, 212 DJW Haddon Properties, LLC, resolving questions over the five-year term on the shared parking agreement. In effect, DEM now had access to all thirty-five parking spaces at 212 Haddon beyond the initial five-year term under the agreement, thereby partially resolving the issue. DEM also contended that given the adoption of section 142-39(A)(7)(q), DEM's previous application for a twenty-four-parking-space variance had been reduced to an application for four additional parking spaces.

DEM's planner testified that a separate use variance was not required for the shared parking agreement. He claimed that the Ordinance expressly allowed

off-street parking within 300 feet; the definition of accessory use contained some "flexibility as far as whether or not it has to be located on the same lot"; no other approvals were required because there was no development or alterations proposed; and the application was in line with the Township's Master Plan.

On cross-examination, Towne Center suggested that as the accessory use definition was in the "zoning section" and the off-street parking section was in the "parking section" of the Ordinance, the two sections should be read separately to give each provision independent meaning. DEM countered that the provision of the Ordinance allowing parking to be on a lot up to 300 feet away was more specific and should be prioritized over the general definition, a previously stricken portion of the Ordinance tacitly allowed shared parking, and the Board had previously adopted shared parking concept resolutions for other establishments without requiring either property to undergo a use variance application. The Board adopted a resolution finding the Ordinance does not require "the lending property in a shared parking situation . . . to obtain a use variance."

As to the remainder of the remand, DEM reiterated that the adoption of section 142-39(A)(7)(q) reduced DEM's application to a four-parking space

variance request and proceeded to call DEM's principal, Welsh, to testify on the license between 206 and 212 Haddon. Welsh testified the agreement included a renewal option extending the original five-year term and assignment provision because he owned both properties. The Board adopted a resolution declaring that DEM's required parking allotment had been reduced to four spaces given both the enactment of section 142-39(A)(7)(q) and DEM's "legal right" to use the thirty-five spaces at 212 Haddon.

In the hearing after remand, Towne Center again argued the parking provision of the Ordinance could not be read to modify the zoning provisions. Counsel for the Board argued the proposed shared parking lot was already the accessory use to 212 Haddon, and because there was no change of use, DEM did need not to apply for a use variance to use the parking lot as a parking lot. In response, Towne Center contended the accessory use to 212 Haddon could not be transposed to 206 Haddon and to do so would directly contravene the Ordinance's definition requiring an accessory use to be on "the same lot."

For its part, DEM reiterated that the plain meaning of the specific Ordinance provision at issue here allowed parking to be on a lot up to 300 feet away, the definition of accessory was ambiguous, the word "customary"

12

modified the entire definition, and the cases cited by Towne Center were readily distinguishable.[3]

Ultimately, the court found that although "modification of a statute by implication is disfavored," it read the later-enacted "very specific parking requirements under section 142-39(A)(5) [to] control over the general definition of accessory use contained in section 142-10."

Towne Center appeals, arguing the court erred in interpreting the Ordinance, that the "split lot arrangement required DEM to secure a use variance," and that the entity that owns 212 Haddon may be required to seek a use variance. Town Center again reprises the argument it made to the trial court that "the [Ordinance's] definition of 'accessory use' controls." We disagree.

---

[3] The court found the cases proffered by the parties did not "necessarily support[] the position of either party," and each was readily distinguishable. The court specifically rejected Towne Center's arguments that Financial Services, LLC v. Zoning Board of Adjustment of Little Ferry, 326 N.J. Super. 265, 274-75 (App. Div. 1999), which involved the expansion of a non-conforming use, a gas station, and a proposed check cashing business as an accessory use, was analogous to the restaurant and parking in this case.

Likewise, as to Nuckel v. Little Ferry, 208 N.J. 95 (2011), the court found that the contemplated accessory use—a driveway to be constructed on property containing a non-conforming use—was distinguishable from the existing parking lot before the court. Finally, as to New Jersey Transit Corp. v. Franco, the court indicated that the potential evaluation of uses in a property condemnation was not instructive. 447 N.J. Super. 361 (App Div. 2016).

II.

"When reviewing a trial court's decision regarding the validity of a local board's determination, 'we are bound by the same standards as was the trial court.'" Jacoby v. Zoning Bd. of Adjustment of Borough of Englewood Cliffs, 442 N.J. Super. 450, 462 (App. Div. 2015) (quoting Fallone Props., LLC v. Bethlehem Twp. Plan. Bd., 369 N.J. Super. 552, 562 (App. Div. 2004)). "[T]he meaning of an ordinance's language is a question of law that we review de novo." Bubis v. Kassin, 184 N.J. 612, 627 (2005).

III.

A.

We first turn to consider the primary issue raised in this appeal: whether DEM or the owner of 212 Haddon needed to obtain a use variance for 206 Haddon's license to use 212 Haddon's existing parking lot, in order to satisfy 206 Haddon's parking requirements. Specifically, whether the later-enacted specific parking requirements for DEM's bar and restaurant under section 142-39(A)(5) control over the general definition of accessory use contained in section 142-10. If section 142-39(A)(5) controls, the use of off-lot parking contemplated in the shared parking agreement is a permitted accessory use, subject to site plan approval. If, however, section 142-10's accessory use

definition controls, the contemplated use would be specifically forbidden, requiring an application for a use variance for use of the parking lot at 212 Haddon, pursuant to N.J.S.A. 40:55D-70d.

The first provision states in pertinent part:

> Location of parking and loading. Required off-street parking and loading spaces shall be provided <u>on the same lot or on any lot within 300 feet</u>. When some or all parking is not to take place on the same lot as the premises served, the Planning Board shall require evidence during site plan approval which demonstrates the availability of such off-site parking taking into consideration the operations and the hours of the use for which the off-site parking serves.
>
> [§ 142-39(A)(5).]

Section 142-10 of the Ordinance defines the term "accessory use" as "[a] use of land or of a building or portion thereof customarily incidental and subordinate to the principal use of the land or building and located on the same lot with such principal use."

DEM argues the plain language supports its proposition that the accessory use is not confined to the same lot as the primary use. In interpreting the plain meaning, DEM suggests that the term "customarily" in the accessory definition modifies "incidental," "subordinate," as well as "located on the same lot," and thus, the accessory use does not strictly need to be on the same lot.

15

Towne Center argues that in rejecting its challenge to the Board's approval of DEM's application and in finding no use variance was required to permit accessory use off-street parking on adjacent property, the court disregarded the plain language of the Ordinance, and that principles of statutory construction compel a finding that a use variance is necessary. It seeks a reversal of all prior approvals granted to DEM as a matter of law.

We remain wholly unpersuaded by Towne Center's arguments. DEM is not proposing to use any part of 206 Haddon for parking; thus, there is no question about any accessory use relative to 206 Haddon—and 212 Haddon's parking is already a permitted accessory use.

The only issue here is whether the parking lot that is already an accessory use to an office building at 212 Haddon can be used by DEM to satisfy its parking obligation, when a provision of the Ordinance provides that "off-street parking and loading spaces shall be provided on the same lot or on any lot within 300 feet." See § 142-39(A)(5).

B.

Towne Center suggests the new provision requiring off street parking "on the same lot or any lot within 300 feet," constitutes an implied repealer of the definition of accessory use under the Ordinance and is invalid. That argument

16

is meritless. In harmonizing seemingly conflicting provisions of a statute or ordinance, courts turn to the general canons of construction, including (1) the specific provision controls over the general; (2) the last-in-time provision controls; and (3) repeal by implication is disfavored. N.J. Transit Corp. v. Borough of Somerville, 139 N.J. 582, 591 (1995); Kingsley v. Wes Outdoor Advertising Co., 55 N.J. 336, 339 (1970) ("It is only logical to conclude that the legislature must have had the general jurisdictional act . . . in mind when it adopted the specific statute . . . and intended that the limitation in the former act should not apply to the latter."); Kemp by Wright v. State, 147 N.J. 294, 306-07 (1997) ("A new law altering fundamental assumptions relied upon by the old law will work to supersede earlier inconsistent statutes." (quoting N.J. State Policemen's Benevolent Ass'n v. Town of Morristown, 65 N.J. 160, 165 (1974))); New Jersey Ass'n of School Adm'rs v. Schundler, 211 N.J. 535, 555-56 (2012) ("[T]here is a strong presumption in the law against implied repealers and every reasonable construction should be applied to avoid such a finding." (quoting In re Comm'r of Ins.'s Issuance of Orders A–92–189 & A–92–212, 137 N.J. 93, 99 (1994) (alterations in original))).

Applying these principals, we agree with the trial court's findings that the parking provision at issue is more specific than the general accessory use

definition and the parking provision was amended last in time in 2017. As to implied repealer, we find Town Center's arguments unpersuasive. Although it would certainly be preferable for the governing body to amend the definition of accessory use to acknowledge the limited modification it effected in enacting section 142-39(A)(5) to allow required off-street parking in the downtown commercial zoning district to be provided on any lot within 300 feet, we cannot ignore the record before us includes Haddon's 1999 Master Plan referencing underutilized parking on Haddon Avenue that "could be used as a daytime parking for local merchants and customers" and the subsequent 2008 Master Plan Reexamination Report explicitly recommending the "shared parking" concept.

In its review of DEM's application, the Board:

> acknowledge[d] that both the Master Plan and Re-examination Report both make reference to the benefits of shared parking. That is, the use of the same parking lots by multiple users whose time of maximum usage does not conflict. Section 142-39(A)(5) as adopted by the Commissioners reflected their endorsement and adoption of the concept.

Although we are not bound by a planning board's determination of a question of law, as our review is de novo, we nevertheless "give deference to a municipality's informed interpretation of its ordinances," DePetro v. Twp. of

Wayne Plan. Bd., 367 N.J. Super. 161, 174 (App. Div. 2004), cognizant "that local officials are 'thoroughly familiar with their communities' characteristics and interests' and are best suited to make judgments concerning local zoning regulations." Pullen v. Twp. of S. Plainfield Plan. Bd., 291 N.J. Super. 1, 6 (App. Div. 1996) (quoting Ward v. Scott, 16 N.J. 16, 23 (1954)). And, we conclude that it is significant that this interpretation of the Ordinances is consistent with the Master Plan. Manalapan Realty, L.P. v. Twp. Comm. of Twp. of Manalapan, 140 N.J. 366, 380 (1995) (first citing Zilinsky v. Zoning Bd. of Adj. of Verona, 105 N.J. 363, 367 (1987); then citing N.J.S.A. 40:55D–62(a)).

C.

In the remand hearing, Towne Center's counsel argued the ordinance could not have been "intended to permit the arrangement advocated by DEM in the absence of a use variance because it would effectively negate the parking contemplated by the site plan approval obtained for the office building." Counsel further maintained the proposed use was an "expansion" of 212 Haddon's current use, and the change in intensity of use required additional review.

Towne Center failed to support its argument with actual evidence and never produced an approved site plan for 212 Haddon establishing a baseline for identifying a change of intensity. All parties agree the shared parking agreement would draw additional foot traffic to 212 Haddon's parking lot during DEM's business hours after 5:00 p.m. The record indicates the Board took extensive testimony from experts and members of the public to understand the effect of the shared parking agreement when it originally limited the number of required off-street parking spaces to thirty-five for 206 Haddon. Although peak use of 212 Haddon's parking lot is likely during regular business hours, there is no question that the spaces are available after those hours—as anticipated in the report of DEM's expert—making it presumptively suitable for DEM's parking needs.

The 212 Haddon parking lot is a permitted accessory use of the office building. Haddon's 1999 Master Plan references underutilized parking on Haddon Avenue that "could be used as a daytime parking for local merchants and customers," and the subsequent 2008 Master Plan Reexamination Report explicitly recommends the "shared parking" concept. There is nothing in this record to suggest making 212 Haddon's parking spaces available to 206 Haddon—a use anticipated by the Ordinance in section 142-39(A)(5), the

Master Plan and the Master Plan Reexamination Report—would trigger any additional approvals or reviews for 212 Haddon.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION